**STATE ex rel. FREELING, Atty. Gen., v. LYON, Secretary of State.**

No. 9071—Opinion Filed May 15, 1917.

(165 Pac. 419.)

(Syllabus by the Court.)

1. **Courts—Mandamus in Appellate Court— Matters of Public Right—Delivery of Notaries' Commissions.**

The delivery of commissions to notaries public throughout the state and the refusal of the secretary of state to deliver such commissions to the persons appointed by the Governor is publici juris, and this court will entertain an original action brought by the state, upon relation of the Attorney General, for mandamus directing the secretary to deliver the commissions.

2. **Mandamus—Public Officers— Ministerial Duties.**

It is the duty of the secretary of state to deliver the commissions to the notaries public appointed by the Governor of the state, and this duty is ministerial. Upon the refusal of the secretary to perform this duty, a writ of mandamus may issue from the court to compel him to do so.

3. **Same.**

A writ of mandamus may lawfully issue from a court having jurisdiction to compel an executive officer to perform a mere ministeral act which the law imposes upon him the duty to do.

Original action for a writ of mandamus by the State of Oklahoma, on relation of S. P. Freeling, Attorney General, against J. L. Lyon, as Secretary of State. Peremptory writ of mandamus awarded.

S. P. Freeling, Atty. Gen., and Jno. B. Harrison, Asst. Atty. Gen., for relator.

Warren K. Snyder, E. G. McAdams, and Norman R. Haskell, for respondent.

OWEN, J. This is an original action in this court for a writ of mandamus, instituted by the state of Oklahoma, upon the relation of S. P. Freeling, Attorney General, against J. L. Lyon, secretary of state.

It appears from the petition and response that Hon. R. L. Williams, Governor of the state, appointed certain persons notaries public, and the respondent, acting as secretary of state, attested the commissions as required by law, but refused to deliver them to the various persons appointed by the Governor and named in the commissions. In his response the secretary of state says, as his reasons for not delivering the commissions, the amount of money appropriated for his contingent fund for the fiscal year ending June 30, 1917, will not cover all the necessary expenditures of his office properly chargeable against that fund, and if he uses the necessary amount of that fund to defray the expenses of postage to deliver these commissions, he will not have a sufficient sum to meet the other expenses of his office which will arise before the expiration of the fiscal year. Further, he says he delivered, through the United States mail, commissions to the persons named in five cities and towns of the state, and that it appears from a tabulated statement (attached to his response) of the

population of the towns in which the other persons reside there are already a sufficient number of notaries public residing in these places to properly serve the public interests, and therefore there exists no necessity to deliver the commissions in question.

Counsel for the respondent, in opposing the issuance of the writ, group their objections under four propositions: First, they challenge the jurisdiction of the court because, as they say, it appearing from the allegations of the response, and the tabulated statement attached, there is no public need for these additional notaries, the question presented to this court is not publici juris, and therefore the court ought not exercise its original jurisdiction to hear and determine the case. We agree with counsel that this court should not grant the writ unless some interest of the public is involved, or, in other words, unless the public has some right involved in the question before the court. To determine this we must consider the meaning of the terms under discussion. By "publici juris," we understand, is meant "of public right." The word "public," in this sense, means "pertaining to the people, or affecting the community at large; that which concerns a multitude of people." Webster's New International Dictionary; Greenl. Ev. 152; Stockton v. Williams, 1 Doug. (Mich.) 546; Morgan v. Cree, 46 Vt. 773, 14 Am. Rep. 640. The word "right," as used here, is defined in Bouvier's Law Dictionary as "a well-founded claim; an interest; concern; advantage; benefit." We understand "public interest" to mean more than a mere curiosity; it means something in which the public, the community at large, has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does not mean anything so narrow as the interests of the particular localities which may be affected by the matters in question.

The question presented here is furnishing notaries public throughout the state commissions authorizing the discharge of their duties. If the secretary of state can determine the need for notaries in any particular locality and withhold 70 commissions, as it appears in this instance he has done, what is there to prevent his withholding all the commissions issued to notaries public in the state? When we consider the office of notary public in relation to the transaction of public business—the business of the whole people of the state—and that all conveyances of real estate to be recorded, including deeds, mortgages, satisfaction of mortgages, leases, powers of attorney, affidavits, and contracts, must be acknowledged before a proper officer and authenticated by his seal of office, and that officers other than notaries authorized

to take such acknowledgments are accessible to a very small per cent. of the people, we must conclude the duties of a notary public affect the pecuniary interests, legal rights, and liabilities of the public. The discharge of the duties of that office materially affect the legal rights not only of the parties to the instruments acknowledged, but also the public at large. In the proper exercise of those duties and the easy access to these officials the public is concerned and has a right, to the end that business may be dispatched without unnecessary delay and inconvenience. The respondent cannot be heard to say there is no public need for these notaries whose commissions he refuses to deliver. The law gives him no voice in the appointment. The law does not lodge with him the power or authority to determine what localities do require and what localities do not require notaries public. That power is lodged with the Governor, under section 4240, Rev. Laws 1910, which is as follows:

"The Governor shall appoint and commission in each county as occasion may require, one or more notaries public who shall hold their office for four years."

Second, counsel urges that this court is without authority to grant the writ in this case for the further reason to do so would be to direct the discretion of the secretary of state in the expenditure of the contingent fund of his office, and, not having what he considers sufficient funds to meet the expenses of his office, he has the right to direct what expenditures will be made from the fund. We recognize the well-settled rule that courts will not undertake to control the discretion of a public officer by a writ of mandamus. But that rule has no application here. Section 4242, Rev. Laws 1910, reads as follows:

"Blanks for bonds and oath of office shall be furnished with the commission by the secretary of state."

This statute makes it the duty of the secretary to furnish the commission to the person appointed by the Governor. This is a mere ministerial duty placed upon the secretary by the law, and in the performance of which he has no discretion. The courts universally hold a writ may issue to compel an officer to perform a ministerial duty. Norris v. Cross, 25 Okla. 287, 105 Pac. 1000. It is no answer to the commands of the statute to say it will require some postage to deliver the commissions through the mail, and, postage being one of the expenses for which the contingent fund was appropriated, the secretary has a discretion as to how and when it will be used. The law imposes the duty to furnish these commissions. The performance

of this duty being ministerial, the secretary should perform it when the occasion arises, as any other of the duties of his office. In holding this duty under the statute to be ministerial, we are not without authority. The case of United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167, is one in which the Secretary of the Interior refused to deliver a patent to certain land to one McBride after the patent had been duly issued and attested. In that case the court said:

"The next objection to issuing a writ which we are called to consider is that the Secretary, in deciding whether he would deliver the patent to McBride or not, was called upon to exercise a judgment and discretion on the case presented to him which were not merely ministerial, but which were rather judicial in their character, and in regard to which many matters were to be considered, such as the validity of the title conferred by the patent, the circumstances under which it was signed, sealed, and recorded, and the conflicting rights of other parties to the lands covered by it. * * * No further authority to consider the patentee's case remains in the Land Office. No right to consider whether he ought, in equity or on new information, to have the title or receive the patent. There remains only the duty, simply ministerial, to deliver the patent to the owner—a duty which, within all the definitions, can be enforced by the writ of mandamus."

To the same effect is Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 118; Kendall v. United States, 12 Pet. 524, 9 L. Ed. 1181. The last-named case was one in which, under an act of Congress, the Postmaster General was directed to credit to Stokes, on a certain contract with the Post Office Department, whatever sum of money the Solicitor of the Treasury, after examination, should decide to be due. The Solicitor of the Treasury certified the parties were entitled to credit for a certain sum. The Postmaster General entered credit for a smaller sum than that found by the solicitor to be due. A writ of mandamus was applied for, and there, as here, counsel for respondent contended that it was an effort to enforce and control an official duty; an infringement upon the executive department of the government; the court was without authority to control the Postmaster General's discretion in the matter. The Supreme Court of the United States in that case said:

"We do not think the proceeding in this case interferes in any respect whatever with the rights and duties of the executive, or that it involves any conflict of powers between the executive or judicial departments of the government. The mandamus does not seek to direct or control the Postmaster General in the discharge of his official duty, partaking in any respect of an executive character, but to enforce the performance of a mere ministerial act which neither he nor the President had any authority to deny or control. * * * The act required by the law to be done by the Postmaster General is simply to credit S. & S. with the full amount of the award of the Solicitor of the Treasury. This is a precise, a definite, act, purely ministerial, and about which the Postmaster general had no discretion whatever. This was not an official act in any other sense than being a transaction in the department where the books and accounts were kept, and was an official act in the same sense that an entry in the minutes of the court, pursuant to an order of the court, is an official act. There is no room for the exercise of discretion, official or otherwise. All that is shut out by the direct and positive command of the law; and the act required to be done is in every just sense a mere ministerial act."

Counsel for respondent, in urging this proposition, rely upon the case of Farris et al., School Board, v. State ex rel. Murphy, 46 Neb. 857, 65 N. W. 890. The question in that case arose over the failure of the school board to appropriate the necessary money to purchase school books. The board alleged there had been no levy for that purpose, and that the contingent fund provided for would be exhausted by claims already incurred and not paid. The court in the opinion says:

"It is very clear that no portion of the state apportionment could be appropriated to any other purpose than the payment of teachers' wages. Com. St. subd. 5, c. 79, par. 8 In any view of the resources of the district as disclosed by the pleadings, it is perfectly clear that there were no funds available, after paying salary of teacher, fuel bills, and necessary incidentals, wherewith to buy text-books."

Had the secretary, by his response in this case, shown that he was at this time without funds, or for any reason it was impossible for him to comply with the statute, a different question would be presented.

Third, counsel urges that to require the secretary's compliance with the statute in this instance is, in effect, to require him to incur the necessary expense for the postage necessary to deliver each commission, and that constitutes an expenditure of public funds, and the action is therefore one against the state, and cannot be maintained on this application. In support of this contention counsel cite the case of Lovett v. Lankford, 47 Okla. 12, 145 Pac. 767. That case was one in which Lovett and the other commissioners of Creek county sought, by mandamus, to control the actions of the bank commissioner in determining whether certain moneys deposited in a bank should be paid out of the

depositors' guaranty fund upon the failure of the bank. The law made it the duty of the bank commissioner to determine upon the facts presented whether the depositor was protected by the guaranty fund. The court properly held in that case such duty required the exercise of judgment and discretion, and this court would not control that discretion by mandamus.

Fourth, counsel insist that the allegations in the response present a question of fact as to whether the secretary has sufficient funds and clerks at his disposal to deliver the commissions through the mail without neglecting some of the other duties of his office. Holding, as we do, the facts alleged in the response do not constitute a defense to the writ, the duty of the secretary being purely ministerial, there is not such an issue of fact presented here as requires a trial by jury. The law makes it the plain ministerial duty of the secretary to deliver these commissions. This court is not concerned at this time as to the method of delivery.

The peremptory writ of mandamus is therefore awarded.

All the Justices concur.