STATE EX REL. POLAR WARE COMPANY, Respondent, v. MUUSS and others, Appellants. [Case No. 131.]*

TOWN OF SHEBOYGAN, Respondent, v. CITY OF SHEBOYGAN, Appellant. [Case No. 132.]*

*November 30, 1962—January 8, 1963.*

* Motions for rehearing denied, with $25 costs, on March 5, 1963.

522

For the appellants there were briefs and oral argument by *Anthony M. Werner,* city attorney.

For the respondent Polar Ware Company there was a brief by *Federer, Grote, Hesslink, Rohde & Neuses* of Sheboygan, and oral argument by *Robert L. Rohde.*

For the respondent town of Sheboygan there was a brief by *Rabinovitz & Hodson* of Sheboygan, and oral argument by *David Rabinovitz.*

Briefs *amici curiae* were filed by *Edwin C. Conrad,* city attorney, for the city of Madison; by *Seward R. Stroud,* village attorney, attorney, and *Francis Lamb* of Madison of counsel, for the village of Maple Bluff; and by *John G. Gerlach,* town attorney, attorney, and *Robert D. Sundby* of Madison of counsel, for the town of Madison.

FAIRCHILD, J. The questions involve the interpretation of sec. 40.035, Stats. They are (1) whether the city had power to annex under sec. 40.035 (6) when the attachment of territory to the city for school purposes took place before July 1, 1962, (2) whether the referendum on annexation

must be held throughout the territory attached for school purposes even if the city attempts to annex only a portion thereof (assuming as here, that all the territory attached is in one town), and (3) whether a city may separately annex two or more portions of a single territory attached for school purposes (making the same assumption).

1. *The city's power to annex where the attachment for school purposes took place before July 1, 1962.* Sec. 40.035, Stats., was enacted by ch. 563, Laws of 1959.[1] Sub. (1) ordained that after June 30, 1962, all territory in Wisconsin shall be included in districts operating high schools. Sub. (2) provided that between the effective date (October 29, 1959) and June 30, 1962, territory not in such a district might be put into such a district by any of five specified previously existing statutory procedures. (One was sec. 40.03, used in the case before us.) Sub. (3) created a new and quite-summary procedure to be used by a county school committee during July, 1962, in those cases where the goal stated in sub. (1) had not been achieved by the target date. These subsections, and subs. (4) and (5) all appeared in Bill No. 48, S., when introduced and were devoted to the goal announced in sub. (1).

Sub. (6) [2] of sec. 40.035, Stats., had its genesis in Amendment No. 1, S., to Bill No. 48, S. It reflects a recognition of some of the conflicts involved in the orderly growth of a city through annexation, and recognition that where outlying

[1] Amended by ch. 631, Laws of 1961, in respects not material here.
[2] "Within sixty days of the receipt of an order made pursuant to this section the city council in a city operating under a city school system may by ordinance, enacted by a two-thirds vote of all the members elect, annex or consolidate for all purposes such portion of the territory not then a part of a district operating a high school which is included within the order as is urban in character or reasonably necessary for proper growth of the city. Such ordinance shall be effective ninety days after its passage and publication unless within such time a petition for a referendum on the question of annexation or consolidation for all purposes is filed with the city clerk

territory has been in a district providing high-school opportunities only by payment of tuition, attachment thereof to the city for school purposes only may make annexation less attractive and impede the growth of the city because the attached territory will receive integrated school service as a part of the city district without being required to become part of the city for all purposes. Although sub. (6) made an annexation depend upon a favorable referendum vote, it did facilitate annexation to the extent of permitting the city council to initiate the proceeding, subject only to the referendum.

Sub. (6) of sec. 40.035, Stats., confers power to annex only when an order has been "made pursuant to this section." Respondents' position appears to be that an order made by a county school committee following the procedure authorized by sec. 40.03, could have been made without the passage of sec. 40.035, and therefore was not "made pursuant to this section." Respondents would restrict the power conferred by sub. (6) to situations where an order had been made on or after July 1, 1962, under the procedure authorized by sub. (3). The city's position is that any order made on or after October 29, 1959, which put territory which is not included in a district operating a high school into a district operating a high school, whether under the procedures men-

signed by 10 percent of the electors residing in the territory on the date the petition is filed, in which case the ordinance shall not be effective unless approved by more than 50 percent of the electors voting in such referendum. The referendum shall be conducted as provided in sec. 66.021 (5) as far as practicable. If the electors of the territory vote in favor of consolidation, then the city shall conduct a referendum as required by sec. 66.02 for the purpose of effecting a consolidation, and if said referendum fails the territory shall nevertheless become a part of the city for school purposes. Any territory included in such order which is not involved in any petition for annexation or consolidation shall become a part of such city school system as a result of such order. This section shall not apply to counties containing a city having a population of 500,000 or more."

tioned in sub. (2) or under the procedure created by sub. (3) is an order "made pursuant to this section." The learned circuit judge agreed with the city, and we are of the same opinion.

Sec. 40.035, Stats., established a goal, to be accomplished by use of existing procedures up to a specified target date, and only thereafter to be fulfilled by the use of the new and more-summary procedure of sub. (3) where necessary.

"Pursuant to" is a preposition, defined as: "in the course of carrying out: in conformance to or in agreement with: according to (*pursuant to* the proposals of this note) (acted *pursuant to* their agreement)." [3] Although sec. 40.035 created no new authority to attach districts during the period from its effective date to June 30, 1962, it provided a degree of compulsion for the use of existing procedures to fulfil the announced goal. The legislature doubtless anticipated that the goal would be largely accomplished by the use of existing procedures before the target date, and that relatively few situations would need to be dealt with under sub. (3). We conclude that giving "pursuant to" its ordinary meaning, sub. (6) applied to all orders made on or after October 29, 1959, to accomplish the purpose announced in sub. (1). The purpose sub. (6) was intended to serve is at least as consistent with this construction as any other.

2. *Must the referendum on annexation be held throughout the territory attached to the city for school purposes?* The city contends that it properly annexed Area 4 in which no referendum was required, and that its attempts to annex other areas are immaterial in determining the validity of the annexation of Area 4. The town argues that even if the city had annexed Area 4 only, and had not attempted to annex the other areas, sub. (6) of sec. 40.035, Stats., requires a refer-

---

[3] Webster's New International Dictionary (3d ed., unabridged), p. 1848. See also definition of "pursuant," "pursuant to," 35 Words and Phrases (perm. ed.), p. 558.

endum of all the electors residing in the territory of the dissolved district. The argument is that the city was given power to annex a *portion* of the territory attached ("portion of the territory not then a part of a district operating a high school which is included within the order") ; where the referendum is mentioned reference is made to "electors residing in the territory" and "electors of the territory;" *territory* in the latter two instances means the same as "territory" in the first; the annexation is of a *portion* of the territory and the referendum covers the *entire* territory. ·

We conclude, however, that the referendum does not extend beyond the territory annexed. The word "territory" is used five times in sub. (6) of sec. 40.035, Stats. In the first instance it is expressly limited to the territory attached by the order. In the second and third instances, it relates to the referendum and is not expressly qualified. In the fourth instance it refers to territory with which the city council attempts to consolidate, but as to which the consolidation referendum fails. In the fifth instance the word "territory" is expressly limited to "territory included in such order which is not involved in any petition for annexation or consolidation." It is evident that the word has not been used with the same meaning throughout the subsection.

The annexation referendum under sec. 66.021 (5), Stats., is a "referendum of the electors residing in the area proposed for annexation," and the referendum provided for in sec. 66.02 is held in each consolidating municipality. No reason is suggested why the electors of the portion of a dissolved school district not being annexed or consolidated should have a voice in determining the fate of the portion annexed or consolidated. We conclude that the reasonable meaning of sub. (6) of sec. 40.035 is that if the city had, in fact, annexed only one portion of the territory of the dissolved district, only the electors residing in the portion annexed could have petitioned for a referendum, or cast their votes.

*3. May the city separately annex two or more portions of a single territory (within one town) attached for school purposes?* Sub. (6) of sec. 40.035, Stats., authorizes the annexation of "such portion of the [attached] territory . . . as is urban in character or reasonably necessary for proper growth of the city." The word "portion" is in the singular. Read strictly, it authorizes a single annexation, whether or not separate parcels not contiguous to each other might be included in the single portion.[4] A single referendum would be held in the entire portion annexed except that sub. (7) makes it clear that if the portion annexed extended into more than one municipality, referenda would be held separately in the area in each municipality.

The city points out that the legislature has provided a rule of construction permitting words importing the singular number to be applied to several things unless such construction would produce a result inconsistent with the manifest intent of the legislature.[5] If the word "portion" be read "portions," it would follow that the city could do what it attempted here, that any referenda would be held separately in each annexed portion, and that annexation might succeed in some portions while failing in others.

The majority of the members of the court participating in this decision are of the opinion that permitting the city to divide the portion it desires to annex into several portions, each with a separate referendum would attenuate the right of referendum which the legislature intended to preserve. Thus if the six ordinances in this case are considered as separate annexations, they fail because unauthorized. If con-

---

[4] It appears from a map in this record that Area 1, while contiguous with the city was not contiguous with any other area annexed, and that a tract which was treated as part of Area 3 was surrounded by the city and not contiguous to the balance of Area 3 nor to any other area.

[5] Sec. 990.001 (1), Stats.

sidered as a single annexation, they fail because annexation was not approved by a majority vote. The decision of the majority is to affirm the judgment and order of the circuit court.

The writer of this opinion respectfully differs from the decision on this point, and would uphold the annexation of Area 4.

4. *Application of sec. 40.035, Stats., to incorporated villages.* The case before us involves annexation of town territory. Although reference has been made in the brief of the village of Maple Bluff as *amicus curiae* to annexation by a city of territory within an incorporated village, the question whether sec. 40.035, Stats., authorizes such annexation is not before us at this time.

*By the Court.*—Judgment and order affirmed.

FAIRCHILD, J., dissents from the result.
CURRIE and WILKIE, JJ., took no part.