Dear Governor Keating,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Is the Governor's Security and Preparedness ExecutivePanel, convened pursuant to Executive Order 2001-36, subject tothe Oklahoma Open Meetings Act, 25 O.S. 2001, §§ 301-314?
 2. Are documents created or received by the Governor'sSecurity and Preparedness Executive Panel subject to the OklahomaOpen Records Act, 51 O.S. 2001, §§ 24A.1-24A.26?
 I. Introduction
¶ 1 On October 22, 2001, the Governor signed Executive Order 2001-36, which created the "Governor's Security and Preparedness Executive Panel" ("Panel").
¶ 2 The Panel is composed of the Oklahoma Attorney General, the Chairperson of the Corporation Commission, the Director of the Office of Civil Emergency Management, the State Commissioner of Health, the State Bioterrorism Preparedness and Response Coordinator, the State Epidemiologist, the Adjutant General of Oklahoma, the Commissioner of the Department of Public Safety, the Secretary of Transportation, the State Fire Marshall, the Director for the Institute for the Prevention of Terrorism, the Secretary of Agriculture, and Public Safety and Response Representatives from Oklahoma City, Tulsa, Lawton, Enid and Ponca City. Exec. Order No. 2001-36. The Governor's Chief of Staff serves as chair. Id. The order provides that other members can be added if necessary. Id.
¶ 3 The pertinent language of the Executive Order reads as follows:
 I, Frank Keating, Governor of the State of Oklahoma, pursuant to the authority vested in me by Sections 1.[1] and 2[2] of Article VI of the Oklahoma Constitution, hereby establish the Governor's Security and Preparedness Executive Panel.
 In the aftermath of the September 11th tragedy that struck our nation, it's vital that all states, including Oklahoma, embark on a thorough evaluation of all state safety and security measures. The Governor's Security and Preparedness Panel will be empowered to address the entire range of safety and security issues so that Oklahomans will continue to enjoy peace and to conduct their lives in the most secure atmosphere possible.
 The Panel is charged with further developing, coordinating and implementing a comprehensive state strategy to protect the citizens of Oklahoma from the threat of terrorist attacks. The Panel shall, among other things, coordinate the gathering of intelligence to assist in the prevention of attacks, develop plans to protect vulnerable assets, as well as develop plans to achieve a system of rapid response in the unfortunate event of such an attack. These efforts shall be undertaken with input from and coordination with appropriate members of the private sector.
Exec. Order 2001-36 (footnotes added).
¶ 4 Information not contained in the Executive Order, but provided by you, indicates members of the panel are not being paid any additional money for their services on this Panel. The information also indicates the Panel has no staff, and that any staffing assistance will be provided by existing staff. Likewise, no additional monies will be paid to those staffers, if their help is required. Last, the information provided indicates the Panel has no authority to act upon any recommendations it may set forth — that it is only to make recommendations.
 II. Open Meeting Act
¶ 5 You first ask if the Panel is subject to the Open Meeting Act, 25 O.S. 2001, §§ 301-314. The public policy of the Open Meeting Act is "to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S. 2001, § 302[25-302]. Given that declaration of public policy, "[t]he Open Meeting Law, because it is enacted for the public's benefit, is to be construed liberally in favor of the public." Int'l Ass'n of Firefighters, Local 2479v. Thorpe, 632 P.2d 408, 411 (Okla. 1981). Toward that end, all meetings of "public bodies" are required to be "at specified times and places which are convenient to the public and shall be open to the public, except as hereinafter specifically provided."25 O.S. 2001, § 303[25-303]. Furthermore, the meetings of public bodies (with exceptions which are not germane to your question) "shall be preceded by advance public notice specifying the time and place of each such meeting to be convened as well as the subject matter or matters to be considered at such meeting." Id.
Therefore, the answer to your first question hinges on whether the Panel is a "public body" as defined by the Open Meeting Act.
With exceptions not relevant to your inquiry, a "public body" is defined in pertinent part as
 [A]ll boards, bureaus, commissions, agencies, trusteeships, authorities, councils, committees, public trusts or any entity created by a public trust, task forces or study groups in this state supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public property, and shall include all committees or subcommittees of any public body. It shall not mean the state judiciary, the Council on Judicial Complaints . . . or administrative staffs of public bodies. . . .
25 O.S. 2001, § 304[25-304] (1).
¶ 6 The word "panel" is not included in the definition of public body, but that in itself is not dispositive. "The key consideration should be the public nature of the work of the group." Thorpe, 632 P.2d at 410.
¶ 7 A study of the definition of "public body" shows that it must have one of three characteristics: (1) it must be supported in whole or in part by public funds; (2) it must be entrusted with the expending of public funds; or (3) it must administer public property. 25 O.S. 2001, § 304[25-304] (1). As noted above, information provided by you indicates the Panel is not supported in any way by public funds, as its members are not paid anything additional for their services on the Panel; the Panel has no staff of its own but will be supported if necessary by existing staff, who will likewise receive no additional compensation.
¶ 8 You also indicated the Panel has no authority to act upon any recommendations it may set forth — that it is only to make recommendations. This information appears on the surface to conflict with the Executive Order, which states the Panel "is charged with further developing, coordinating and implementing
a comprehensive state strategy." Exec. Order 2001-36 (emphasis added). Using words in their ordinary sense (see 25 O.S. 2001,§ 1[25-1]) the transitive verb "implement" is defined as "carry out, accomplish, fulfill; . . . esp[ecially]: to give practical effect to and ensure of actual fulfillment by concrete measures." Webster's Third New International Dictionary 1134 (3d ed. 1993). Accordingly, the term indicates authority to act in the administration of public property, which would place a validly created entity within the definition of a "public body" subject to the Open Meeting Act. We must therefore determine whether the Panel has the authority to administer public property.
¶ 9 To determine whether the Panel has authority to administer public property, we first turn to its origins and the ability of the Governor to create such an entity.
¶ 10 Although the Governor has the authority to issue binding Executive Orders under certain special circumstances, see,e.g., 74 O.S. 2001, §§ 3301-3305 (giving the Governor the power to create an agency by executive order), no such general power exists. The Oklahoma Supreme Court has considered the Governor's power to issue executive orders and has stated:
 Under the provisions of article 6, and section 1, article 4, of the Constitution, no order, proclamation, or decree of the Governor of the state, as the chief executive thereof, has the force of law; the lawmaking power of the state being vested exclusively else-where.
Russell Petroleum Co. v. Walker, 19 P.2d 582, 587 (Okla. 1933). Therefore, although the governor may issue an executive order, that order has no binding authority in the absence of legislative authorization.
¶ 11 Furthermore, there is no indication the Governor intended here to create an agency pursuant to 74 O.S. 2001, §§3301-3305. This is consistent with the definition of "agency" set forth at 74 O.S. 2001, § 3301[74-3301], which defines the term as "any board, commission, department, authority, bureau, office or other entity created with authority to make rules or formulate orders as defined in the Administrative Procedures Act." When read in its entirety, Executive Order 2001-36 displays no intention to enable the Panel to possess such powers. Rather, when considering both the above discussion on the limits of gubernatorial powers, together with information supplied by your office, it is evident the Governor intended to create a body without authority to do anything other than act in an advisory capacity, thus rendering the word "implementing" as nothing more than executive dicta. In such an instance, an entity acting solely in an advisory capacity would have no authority to administer public funds.
¶ 12 Therefore, for the reasons stated above, the Panel is not a "public body" under the Open Meeting Act, and is therefore not subject to that Act.
 III. Open Records Act
¶ 13 As with the Open Meeting Act, the statement of policy establishes a presumption of openness:
 As the Oklahoma Constitution recognizes and guarantees, all political power is inherent in the people. Thus, it is the public policy of the State of Oklahoma that the people are vested with the inherent right to know and be fully informed about their government. . . . The purpose of this act is to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power. The privacy interests of individuals are adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records. Except where specific state or federal statutes create a confidential privilege, persons who submit information to public bodies have no right to keep this information from public access nor reasonable expectation that this information will be kept from public access; provided, the person, agency or political subdivision shall at all times bear the burden of establishing such records are protected by such a confidential privilege. Except as may be required by other statutes, public bodies do not need to follow any procedures for providing access to public records except those specifically required by the Oklahoma Open Records Act.
51 O.S. 2001, § 24A.2[51-24A.2] (footnote omitted).
¶ 14 Therefore, unless there exists a provision to the contrary, information coming into the possession of a public body or a public official or records generated by a public body must be subject to the Open Records Act.
 A. What Constitutes a "Record"
1. Materials created by the Panel
¶ 15 We first determine what constitutes a "record" under the Open Records Act. A "record" is defined as
 [A]ll documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, and record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property.
51 O.S. 2001, § 24A.3[51-24A.3] (1).
¶ 16 Under this definition, material must bear at least one of three characteristics to be deemed a "record": (1) it must be connected with the transaction of public business; (2) the expenditure of public funds; or (3) the administering of public property. As noted above, the Panel is advisory only and cannot administer public funds or property. We must therefore turn to the other characteristic: whether the material generated by the Panel is connected with the transaction of public business. To answer this, we first focus on the phrase "transaction of public business." Id.
¶ 17 The Oklahoma Supreme Court in State ex rel. Freeling v.Lyon, 165 P. 419 (Okla. 1917), parenthetically[3]
defined the phrase as "the business of the whole people of the state." Id. at 420. More recently, in Farrimond v. State exrel. Fisher, 8 P.3d 872 (Okla. 2000), the Court was faced with whether the Insurance Commissioner, who had taken possession of business records of an insurer for whom it had been appointed as receiver, had an obligation to make records available under Open Records Act. The Court decided that possession by the Insurance Commission of the records of an insurer who was in receivership "did not convert the insurer's records into public records."Id. at 876. Citing the reasoning in a Kentucky case, the Court observed that the Commission "was not functioning as a unit of government in [its] endeavors to rehabilitate [the insurance company]. Instead, [it] was the functional equivalent of a receiver of a private company in liquidation and reorganization charged with administering the company's affairs." Id. (quotingKentucky Cent. Life Ins. Co., by through Stephens v. ParkBroad. of Kentucky, Inc., 913 S.W.2d 330, 334 (Ky.App. 1996)).See also City of New Carrollton v. Rogers, 410 A.2d 1070, 1079
(Md. 1980) (In context of Open Meeting Act, characterizing "transacting public business" as "the deliberative and decision-making process in its entirety which must be conducted in meetings open to the public since every step of the process, including the final decision itself, constitutes the consideration or transaction of public business.").
¶ 18 As noted above, the Panel has no power to transact public business or function as a unit of State government, i.e., it is not a public body. Consequently, materials which may be generated by it are not "records" under the Open Records Act.[4]
2. Materials received by the Panel
¶ 19 We next turn to the characteristics of materials received by the Panel. The definition of "public body" under the Open Records Act states in pertinent part:
 2. "Public body" shall include, but not be limited to, any office, department, board, bureau, commission, agency, trusteeship, authority, council, committee, trust or any entity created by a trust, county, city, village, town, township, district, school district, fair board, court, executive office, advisory group, task force, study group, or any subdivision thereof, supported in whole or in part by public funds or entrusted with the expenditure of public funds or administering or operating public property, and all committees, or subcommittees thereof.
51 O.S. 2001, § 24A.3[51-24A.3].
¶ 20 A comparison between this definition and the one in the Open Meeting Act reveals that the portion of the definition pertinent to your question is virtually identical to the one quoted above, in that the entity must be "supported in whole or in part by public funds or entrusted with the expenditure of public funds or administering or operating public property."Id. As previously noted Panel members are not being paid a salary for their duties on the Panel, nor does the Panel have any expense for staffing. Consequently the Panel is not directly supported, either in whole or in part by public funds. Furthermore, the Panel has no authority to expend public funds. Therefore, the same logic applies here as above, and the Panel is not a "public body" under the Open Records Act; and as a result, materials received by it are not "records" under the Open Records Act.
 B. Public Official
¶ 21 But that does not end the analysis under the Open Records Act. Under this Act, documents which come into the possession of a "public official" are also available to the public. That term is broadly defined:
"Public official" means any official or employee of any
public body as defined herein[.]
Id. § 24A.3(4) (emphasis added).
¶ 22 The insertion by the Legislature of the word "any" is significant. Using words in a statute in their ordinary sense (see 25 O.S. 2001, § 1[25-1]) the word "any" is defined as "one indifferently out of more than two" and "one or some indiscriminately of whatever kind." Webster's Third New International Dictionary 97 (3d ed. 1993). This indicates that a public official need not be associated with a particular public body; it is sufficient if he or she is an official of a public body of whatever kind.
¶ 23 We need not determine whether every person on the Panel is a public official. It is sufficient that some — e.g., the chair of the Corporation Commission, the state Commissioner of Health, the Bioterrorism Preparedness and Response Coordinator — are public officials. Therefore, any material coming into the possession of any one of these public officials would be a record subject to the Open Records Act, if that material is connected with the transaction of public business, the expenditure of public funds or the administering of public property. See 51 O.S. 2001, § 24A.3[51-24A.3](1).
¶ 24 There would, of course, be exceptions to this general rule that materials gathered by public officials are records subject to the Open Records Act. For instance, certain records of the Oklahoma Turnpike Authority and the Tourism Department are exempt by definition. 51 O.S. 2001, § 24A.3[51-24A.3] (1). Also exempt is certain privileged information (id. § 24A.5(1)); certain personnel records (id. § 24A.7(A)); certain records of law enforcement agencies and the Council on Law Enforcement Education and Training (id. § 24A.8(B), (E)); some proprietary information (id. §§ 24A.10(B), (C); 24A.15); citizen complaints (id. § 24A.14); certain educational information, such as individual student records (id. § 24A.16(A)); and litigation and investigatory files of the Attorney General and certain other attorneys (id. § 24A.12). Also exempt, "[p]rior to taking action, including making a recommendation or issuing a report," are a public official's "personal notes and personally created materials . . . prepared as an aid to memory or research leading to the adoption of a public policy or the implementation of a public project" (id. § 24A.9).
¶ 25 There is also an exemption for records which provides that materials "coming into the possession of a public body from the federal government or records generated or gathered as a result of federal legislation may be kept confidential to the extent required by federal law." Id. § 24A.13. Therefore, if public officials on the Panel were working in connection with an agency of the federal government and came into possession of confidential federal records, Section 24A.13 would allow those records to remain confidential under the Open Records Act.[5]
¶ 26 Whether any materials are obtained in connection with any such federal agency and are classified, or whether any materials meet one of the other statutory exceptions to the Open Records Act is a question of fact outside the scope of an Attorney General opinion. 74 O.S. 2001, 18b (A)(5).
¶ 27 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Governor's Security and Preparedness Executive Panel,convened pursuant to Executive Order 2001-36, is not subject tothe Oklahoma Open Meetings Act, 25 O.S. 2001, §§ 301-314,because the Panel is not a "public body" as defined in the Act.
 2. Documents created by the Governor's Security andPreparedness Executive Panel are not subject to the Oklahoma OpenRecords Act, 51 O.S. 2001, §§ 24A.1-24A.26, because the Panelis not a "public body" as defined in that Act, and documents itmay create are not "public records" as defined in the OpenRecords Act.
 3. Any materials in connection with the transaction of publicbusiness, the expenditure of public funds or the administering ofpublic property that may be created by or come into thepossession of any public officials on the Panel constitute"records" as defined in 51 O.S. 2001, § 24A.3(1), and aresubject to the Open Records Act unless the materials fall into acategory which is entitled to confidentiality or otherwiseexempted from the Act. Whether a particular document falls intoone of the exempt categories is a question of fact beyond thescope of an Attorney General Opinion. 74 O.S. 2001,18b(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
DAN CONNALLY Assistant Attorney General
[1] Okla. Const. art. VI, § 1 reads:
 A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law.
 B. The Secretary of State shall be appointed by the Governor by and with the consent of the Senate for a term of four (4) years to run concurrently with the term of the Governor.
Id.
[2] Okla. Const. art. VI, § 2 reads:
 The Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled "The Governor of the State of Oklahoma."
Id.
[3] The issue before the Court was whether the Secretary of State could refuse to deliver commissions to those appointed by the governor as notaries public. Before the Court entertained jurisdiction and the application of a writ of mandamus from the attorney general, it had to decide whether the issue was publici juris. In holding it was, the Court said:
 The question presented here is furnishing notaries public throughout the state commissions authorizing the discharge of their duties. If the secretary of state can determine the need for notaries in any particular locality and withhold 70 commissions, as it appears in this instance he has done, what is there to prevent his withholding all the commissions issued to notaries public in the state? When we consider the office of notary public in relation to the transaction of public business — the business of the whole people of the state — and that all conveyances of real estate to be recorded, including deeds, mortgages, satisfaction of mortgages, leases, powers of attorney, affidavits, and contracts, must be acknowledged before a proper officer and authenticated by his seal of office, and that officers other than notaries authorized to take such acknowledgments are accessible to a very small per cent. of the people, we must conclude the duties of a notary public affect the pecuniary interests, legal rights, and liabilities of the public.
Lyon, 165 P. at 420 (emphasis added).
[4] That this Panel contains individuals who are officers in other facets of government does not cause this Opinion to conflict with the discussion of de facto officers in Attorney General Opinion 73-107. In 73-107, the issue germane to this Opinion was the nature of funds already spent by an entity created by the Governor. After finding that the Governor had no such authority in the absence of legislative authorization (id.
73-107 at 20) the Opinion turned to the issue of whether expenditure of public funds by the entity was invalid — the entity in question apparently had already expended public funds. The Opinion held such expenditures were valid "until such time as it has been determined by a proper authority that the agency or entity in question has not been validly created." Id. at 21. It did so by noting that the members of the entity were "de facto" officers — officers in possession of and actually performing the duties of an administrative officer under color of right or title — and that "chaos and confusion would result if the rule were strictly enforced." Id.
Here, we are not presented with previous expenditure of public funds, and therefore apply the general rule, and not the exception to that rule. That general rule was stated as follows:
 As the rule [dealing with de facto officers] is ordinarily stated there must be an existing office or office de jure to be filled before there can be an officer de facto. Where this rule is strictly adhered to in the case of an office created by an unconstitutional or invalid statute, the incumbent cannot be regarded as a de facto officer.
Id. at 21 (quoting 67 C.J.S. Officers § 136). Therefore, the mere presence on the Panel of people who may be public officials in other facets of government does not in and of itself render the Panel a public body. Materials coming into the possession of public officials is discussed below.
[5] As an example where this statutory exception might apply, the federal Office of Homeland Security is charged with
Sec. 3. (b)(i) [W]ork[ing] with Federal, State, and local agencies, as appropriate, to:
(A) facilitate collection from State and local governments and private entities of information pertaining to terrorists threats or activities within the United States;
. . . .
(c)(ii) . . . coordinate programs and activities for training Federal, State, and local employees who would be called upon to respond to such a threat or attack;
. . . .
(d)(iii) coordinate efforts to improve the security of the United States borders, territorial waters, and airspace in order to prevent acts of terrorism within the United States. . . .
. . . .
(e)(iii) develop criteria for reviewing whether appropriate security measures are in place at major public and privately owned facilities within the United States[.]
Exec. Order No. 13,228, 66 Fed. Reg. 51,812 (Oct. 10, 2001). Since that agency has authority to classify information as "Top Secret," (id. Sec. 6) any documents secured from that agency, which are classified as such, would be exempt from the Open Records Act pursuant to Section 24A.13.