2004 OK 67

FABIAN & ASSOCIATES,
P.C., Appellant,

v.

STATE of Oklahoma ex rel., DEPARTMENT OF PUBLIC SAFETY and Bob Ricks, as Commissioner of Public Safety, Appellees.

No. 98,888.

Supreme Court of Oklahoma.

July 6, 2004.

Stephen G. Fabian, Jr., Michael O'Brien, Fabian & Associates, P.C., Oklahoma City, OK, for Appellant.

Jerry C. Blackburn, Oklahoma City, OK, for Appellees.

WINCHESTER, J.

¶ 1 The question before us in this case is whether tape recordings of Implied Consent Hearings before the Department of Public Safety are records as defined by two acts: The Records Management Act, 67 O.S.2001, § 203(a); and The Oklahoma Open Records Act, 51 O.S.2001, § 24A.3(1); and whether the Department of Public Safety is required to provide copies for public inspection. The appellant, Fabian & Associates, P.C., petitioned for a declaratory judgment and an injunction against the State of Oklahoma ex rel. the Department of Public Safety and Bob Ricks, Commissioner, appellees, declaring that destruction of the tape recordings violated the two acts, and for an injunction prohibiting the appellees from destroying any of these tape recordings in the future unless

done in accordance with The Records Management Act.

¶ 2 On December 27, 2002, the trial court heard an application for a temporary injunction, and after argument by counsel, declared the tape recordings were not records as defined in 67 O.S.2001, § 203, denied the injunction and dismissed the case. On appeal, the Court of Civil Appeals reversed and remanded. We granted certiorari.

¶ 3 Fabian & Associates, P.C., is a law firm that defends persons accused of driving or being in actual physical control of a vehicle while under the influence of alcohol or other intoxicating substances. The firm handles both the driver's license revocation process and the criminal charges. Hearings on driver's license revocations are conducted before the Department of Public Safety (DPS) or a designated hearing officer. 47 O.S.2001, § 754(F). Subsection F includes the provision that the "hearing may be recorded."

¶ 4 DPS attempts to record all of these hearings. DPS asserts that licensees and their attorneys are allowed to make their own recording of the hearing either through tape recording or short hand reporter. The parties are informed by written notice that a tape of the proceeding, when available, may be purchased for $5.00. However, when the DPS has set aside the revocation of the driver's license, the tapes are reused and therefore not available.

¶ 5 Having prevailed in hearings before DPS, Fabian requested those tapes for use in the criminal cases pending against its clients. DPS informed Fabian that it no longer provided tapes on a case that had set aside a revocation, so Fabian commenced its action against DPS.

¶ 6 DPS argued before the trial court and in its Petition for Writ of Certiorari that the law permitted but did not require the hearings to be recorded. 47 O.S.2001, § 754(F).[1]

---

1. 47 O.S.2001, § 754(F) provides: "The hearing before the Commissioner of Public Safety or a designated hearing officer shall be conducted in the county of arrest or may be conducted by telephone conference call. The hearing *may* [emphasis added] be recorded and its scope shall cover the issues of whether the officer had rea-

sonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as

DPS would have this Court conclude that because the statute is permissive regarding making the tapes, they are not records under the Open Records Act or the Records Management Act. DPS asserts that we should follow *Oklahoma City News Broadcasters Ass'n, Inc. v. Nigh,* 1984 OK 31, ¶¶ 8, 14, 683 P.2d 72, 74, 76, where records pertaining to the Governor's Mansion Account were held not to be Open Records because the law did not require they be kept.

¶ 7 The Open Records Act was amended after *Nigh* was handed down. The statute cited in *Nigh* was 51 O.S.1981, § 24. It provided:

"It is hereby made the duty of every public official of the State of Oklahoma, and of its subdivisions, who are required by law to keep public records pertaining to their said offices, to keep the same open for public inspection for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this state, and its subdivisions, during all business hours of the day; provided, however, the provisions of this act shall not apply to income tax returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret."

¶ 8 The statute explicitly states that public records are those which public officials "are required by law to keep." It followed that because the Governor was not required to keep a record of the expenditure for the mansion account, neither was he required to keep the expenditures open for public inspection. *Nigh,* 1984 OK 31, ¶ 15, 683 P.2d at 76.

¶ 9 During the next legislative session, the Legislature repealed § 24 and enacted the Oklahoma Open Records Act, 1985 Okla.Sess. Laws, ch. 355, §§ 1–20, now codified as 51 O.S.2001, §§ 24A.1 et seq. The general rule is expressed in the first paragraph of 51 O.S.2001, § 24A.5: "All records of public bodies and public officials shall be open to any person for inspection, copying, and/or mechanical reproduction during regular business hours...."

prohibited by law, and whether the person was placed under arrest."

¶ 10 The term "record" is defined in 51 O.S.Supp.2003, § 24A.3(1). The definition provides in pertinent part:

" 'Record' means all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, and record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property...." [2]

The definition is broad enough to include any method of memorializing information. That information may be either created or received by the public bodies and public officials as defined in the act. The additional phrases, "under the authority of," "coming into the custody, control or possession of," are intended to broaden the phrase "received by" consistent with the purpose of the act "to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power." 51 O.S. 2001, § 24A.2.

■ ¶ 11 The definition of "record" is then limited to that information which is "in connection with the transaction of public business, the expenditure of public funds or the administering of public property." DPS argues that the individualized hearings do not constitute the "transaction of public business," because that phrase has been defined as "the business of the whole people of the state." *State ex rel. Freeling v. Lyon,* 1917 OK 229, ¶ 1, 165 P. 419. DPS asserts that the hearing is not the business of all the people of the state, but of an individual. We do not agree.

2. Although the definition of "record" has been amended since the trial court heard the application for a temporary injunction, the cited portion of the statute has not changed.

¶ 12 Although the hearing involves one person, the outcome of whether one arrested for driving under the influence of alcohol will be permitted to continue to drive on public roads is the business of all the people of the state. "The purpose of the revocation or suspension is to protect the public. . . ." *Robertson v. State ex rel. Lester*, 1972 OK 126, ¶ 14, 501 P.2d 1099, 1102.

¶ 13 Based on these observations, tape recordings of Implied Consent Hearings, even though permissive, are public records. This does not, however, end our examination of the issue. Section 24A.5(1) provides for exceptions to open public records: "The Oklahoma Open Records Act, Section 24A.1 et seq. of this title, does not apply to records specifically required by law to be kept confidential. . . ."

■ ¶ 14 In addition to the general rules regarding public officials and public bodies, DPS is specifically named as a "law enforcement agency" in the definitions section of the Open Records Act. 51 O.S.Supp.2003, § 24A.3(5).[3] Section 24A.8(A)(2) provides: "A. Law enforcement agencies shall make available for public inspection, if kept, the following records . . . 2. Facts concerning the arrest, including the cause of arrest and the name of the arresting officer. . . ." By this statute, DPS is required to make available for public inspection facts concerning the arrest. Fabian asserts that the requested tapes contain the facts concerning the arrest and therefore § 24A.8(A)(2) requires the tapes to be open for public inspection. We agree.

¶ 15 Even though DPS is not required to make tape recordings of its hearings, since DPS has chosen to make them, and since the tapes contain facts concerning the arrest of the individual who was the subject of the hearing, DPS is required to make these tapes available to the public.

¶ 16 DPS argues that if the tape recording is found to be a law enforcement record, DPS would be allowed to destroy the records un-

der 51 O.S.Supp.2003, § 24A.8(C), which provides:

"Nothing contained in this section imposes any new recordkeeping requirements. Law enforcement records shall be kept for as long as is now or may hereafter be specified by law. Absent a legal requirement for the keeping of a law enforcement record for a specific time period, law enforcement agencies shall maintain their records for so long as needed for administrative purposes."

We have established that the tape recordings of these administrative hearings are permitted, not required, by statute. We have further established that the tape is a law enforcement record. If there is no other legal requirement for keeping the tape recording, DPS is not required to keep it.

■ ¶ 17 Fabian answers that the Records Management Act, 67 O.S.2001, § 201, et seq., is the legal requirement provided for preserving the tape, once it is made. Section 209 of that act provides:

"All records made or received by or under the authority of or coming into the custody, control or possession of public officials of this state in the course of their public duties shall not be mutilated, destroyed, transferred, removed, altered or otherwise damaged or disposed of, in whole or in part, except as provided by law."

The Records Management Act defines "record" in 67 O.S.2001, § 203(a) and provides in pertinent part:

" 'Record' means document, book, paper, photograph, microfilm, computer tape, disk, record, sound recording, film recording, video record or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business[,] the expenditure of public funds, or the administration of public property. . . ."

¶ 18 The tape recording of revocation hearings is permitted by statute. 47 O.S.2001, § 754(F). Therefore, it is made "pursuant to

3. The statute, which has included DPS within the definition of "law enforcement agency," has remained unchanged since the Open Records Act was enacted by 1985 Okla.Sess.Laws, ch. 355, § 3(5).

law[4] ... or in connection with the transaction of public business...."

¶19 We hold that the tape recordings made of revocation hearings are records subject to public inspection under the Open Records Act, and are records subject to preservation pursuant to the Records Management Act. Accordingly, the judgment of the trial court is reversed and remanded directing the trial court to grant injunctive and other relief pursuant to 51 O.S.2001, § 24A.17(B) and consistent with the views expressed in this opinion. Section 24A.17(B) provides that any person denied access to a public record and who successfully brings a civil action for declarative or injunctive relief is entitled to reasonable attorney fees. A motion for appeal-related attorney fees must be made prior to issuance of mandate. Okla.Sup.Ct.R. 1.14. Pursuant to the appellant's petition, the trial court shall issue an injunction prohibiting the appellees from destroying future tape recordings unless done in accordance with The Records Management Act.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED.

OPALA, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, WINCHESTER, EDMONDSON, JJ., concur.

HARGRAVE, J., concurs in part; dissents in part.

WATT, C.J., dissenting.

I would affirm the judgment of the trial court.

4. *World Pub.Co. v. White,* 2001 OK 48, ¶11, n. 21, 32 P.3d 835, 842, n. 21, defines the term "pursuant to." "The term 'pursuant to' is a prepositional phrase defined as: in the course of carrying out; in conformance to or in agreement with; or according to a standard. *State ex rel. Polar Ware Co. v. Muuss,* 18 Wis.2d 521, 118 N.W.2d 853, 856 (1963)."