OSCN Found Document:OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMAN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMAN
2016 OK 119
Case Number: 113973
Decided: 12/06/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 119, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



OKLAHOMA ASSOCIATION OF BROADCASTERS, INC., Plaintiff/Appellant,
v.
CITY OF NORMAN, NORMAN POLICE DEPARTMENT, DISTRICT ATTORNEY OFFICE FOR THE TWENTY FIRST JUDICIAL DISTRICT, Defendants/Appellees.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS,
DIVISION II

¶0 On October 30, 2014, Plaintiff filed a request under the Open Records Act, 51 O.S.2011, § 24A.8(A), for a video of an incident which resulted in a criminal defendant voluntarily appearing in district court for an arraignment hearing, being ordered to the custody of his attorney and to the Sheriff's department. Defendants denied the request. Plaintiff filed petition for declaratory judgment, injunctive relief, and mandamus. Defendants filed motions to dismiss. District Court, the Honorable Thad Balkman, presiding, granted the motion. Plaintiff appealed. The Court of Civil Appeals affirmed in part, reversed in part, and remanded the proceedings. Plaintiff petitioned for certiorari, which this Court granted and ordered additional briefs.

COURT OF CIVIL APPEALS' OPINION VACATED IN PART;
JUDGMENT REVERSED; CAUSE REMANDED WITH INSTRUCTIONS.

David McCullough and S. Douglas Dodd, Doerner, Saunders, Daniel & Anderson, LLP, Tulsa and Norman, Oklahoma, for Appellant.
Jeff H. Bryant, Rickey J. Knighton II, Jeanne M. Snider, and Kristina L. Bell, Office of the City Attorney, Norman, Oklahoma, for Appellees City of Norman and Norman Police Department.
Greg Mashburn, Carol Price Dillingham, James B. Robertson, and Heather Darby, Office of the Cleveland County District Attorney, Norman, Oklahoma, for Appellee District Attorney Office for Twenty First Judicial District of Oklahoma.


Taylor, J.,
¶1 Section 24A.8(A) of the Open Records Act (the Act), 51 O.S.2011, § 24A.8(A)(2), required law enforcement agencies "to make available for public inspection . . . [f]acts concerning [an] arrest, including the cause of arrest and the name of the arresting officer . . . ." The questions presented to this Court are whether there was an arrest in the underlying criminal proceeding for purposes of the Act and whether the Act entitles Plaintiff to a copy of a surveillance video depicting the cause of the arrest. We answer in the affirmative.
I. STANDARD OF REVIEW
¶2 Although a judgment granting a motion to dismiss is subject to de novo review, Estate of Hicks v. Urban East, Inc., 2004 OK 36, ¶ 5, 92 P.3d 88, 90, a motion to dismiss will be treated as one for summary judgment when matters outside the pleadings are presented and not excluded. 12 O.S.2011, § 2012(B). Here, Defendants presented a record in a criminal case and provided a video recording at the hearing on the motion to dismiss. The district court, rather than exclude the video, made it part of the record and ordered it to be preserved. The district court implicitly treated the motion to dismiss as one for summary judgment.
¶3 We review a summary judgment under a de novo standard as it presents a question of law. Pickens v. Tulsa Metro. Ministry, 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082. If it appears that there is no substantial issue of material fact and that one party, including the non-moving party, is entitled to judgment as a matter of law, a court shall render judgment for that party. Rules for District Courts of Oklahoma, 12 O.S.2011, ch. 2, app., r. 13(e).
II. FACTS
¶4 On July 25, 2014, a Norman, Oklahoma restaurant's surveillance video captured an incident depicting Joe Mixon striking a female. The Norman Police Department (Department) was called to the location, investigated, and obtained and reviewed the surveillance video. On Friday, August 15, 2014, a Department detective filed an affidavit of probable cause seeking an arrest warrant for Mixon. The detective stated probable cause existed based on interviews completed by other officers, injuries sustained by the victim, and the surveillance video of the incident which he described in detail. The same day, the Cleveland County District Attorney (District Attorney) filed a criminal information, referencing the same incident number as the probable cause affidavit and alleging that Mixon committed the misdemeanor crime of Acts Resulting in Gross Injury, 21 O.S.2011, § 22, when he struck the female. On August 18, 2014, Mixon voluntarily appeared in district court to answer the charge and was arraigned. At the same time, the district court ordered Mixon to be processed by the Cleveland County Sheriff's Department and to remain in custody pending his posting a bond.
¶5 Also on August 18th, KWTV News 9, a member of the Oklahoma Association of Broadcasters (Association), requested a copy of the surveillance video from Department and District Attorney, referencing the Act, 51 O.S.2011, §§ 24A.1-29. On September 3, 2014, the City Attorney for the City of Norman (City) emailed KWTV News 9 that, barring changes, such as the judge ordering the video sealed, he did "not know of a reason why [Department] would not be willing to make copies of the Mixon video available for public inspection and copying after November 1." Without furnishing copies of the video, on September 4, 2014, Department allowed KWTV News 9 and other media to view the video. Association was not present at this viewing.
¶6 On October 30, 2014, Mixon entered an Alford Plea[1] to the criminal charge. The same day, Association made a request under the Act for a copy of the surveillance video from Defendants and KWTV News 9 renewed its request. District Attorney responded, informing Association that it no longer had the video as it had given the video to the victim. City told KWTV News 9 that Department had delivered a copy of the video to the City Attorney, who placed it in a litigation file.
III. PROCEDURAL HISTORY
¶7 On November 3, 2014, Association filed a petition for declaratory judgment and writ of mandamus, in the Cleveland County District Court, seeking a copy of the video. Department and City filed a joint motion to dismiss which was later joined by District Attorney.[2] Defendants urged, among other things not preserved for review in this appeal, see Hough, 1993 OK 112, ¶ 1, 867 P.2d at 440, that Section 24A.8(A) only requires Defendants to allow inspection, not to provide a copy of the video. Association filed a response. Defendants filed a reply additionally urging that Section 24A.8(A)(2) only provides access if a criminal defendant was arrested. The Defendants' position was that Mixon was not arrested.
¶8 On February 20, 2015, the district court held a hearing on Defendants' motion to dismiss. The district court ordered in advance that no recording of the hearing would be allowed and that the surveillance video be shown in open court at the hearing. City and Department told the district court that if it reviewed the docket for Mixon's misdemeanor case, the court would see that Mixon "voluntarily appeared to answer for the charge," no arrest warrant was issued, and there was not an arrest. The district court granted Defendants' motion to dismiss stating (1) the video does not depict an arrest or the cause of an arrest; (2) Department is not required to allow copying under the 2011 Act; (3) the Department properly returned the video to its owner; and (4) that Association does not possess a clear legal right to relief for mandamus to be granted. On April 30, 2015, the district court's journal entry ordered "that the subject surveillance video, which is now part of the court record, be preserved."
¶9 Association appealed, raising several issues. However, none of the parties appealed the district court's finding that the video was part of the record in this case or its order that the video "be preserved pending further action by the Plaintiff." The Court of Civil Appeals reversed in part and remanded for further proceedings, finding that there was no arrest triggering a duty to provide access to the surveillance video under Title 51, Section 24A.8(A)(2). The Court of Civil Appeals remanded the proceedings for a determination of whether the public's interest in access to the video outweighs Defendants' reasons for denying access under Title 51, Section 24A.8(B), which provides for a balancing of interest when disclosure is not required under Section 24A.8(A). In dicta, the Court of Civil Appeals found that the video was part of the court's records; but, because the Cleveland County Court Clerk was not a party to the litigation, "a petition for declaratory, injunctive and mandamus relief as against the court clerk" was premature.
¶10 On February 25, 2016, three days after the Court of Civil Appeals issued its opinion and while the matter was still pending in the appellate courts, the district court issued an order reversing its finding that the video was part of the court's record. Association filed a petition asking this Court to assume original jurisdiction and "issue an extraordinary writ directing the [district court] to immediately withdraw [its] February 25, 2016 Order removing a public record from the custody and control of the court clerk in" this matter. Application to Assume Original Jurisdiction, Petition for Extraordinary Writ, and Brief in Support, Okla. Ass'n of Broads., Inc. v. Balkman, No. 114,827 (Okla. March 22, 2016). This Court assumed jurisdiction and prohibited the district court from enforcing the February 25, 2016 order, citing Oklahoma Supreme Court Rule 1.37, 12 O.S.2011, ch. 15, app. 1, and ordering the Association "be allowed to proceed in accordance with the Open Records Act . . . ." Okla. Ass'n of Broads., Inc. v. Balkman, No. 114,827 (Okla. May 9, 2016).
¶11 Association filed a Petition and an Amended Petition for Writ of Certiorari which are substantially identical except for extraneous, irrelevant attachments to the Petition.[3] This Court ordered briefs on certiorari issues.
IV. ANALYSIS
¶12 Before analyzing the issues raised in the petition for certiorari, we are compelled to address the district court's order making the video part of the court record in this case and ordering its preservation. See Okla. Const. art. VII, § 4. Even though the finding that the surveillance video was part of the court record and the order that it should be preserved were not appealed, the Court of Civil Appeals addressed the issue. Even after the Court of Civil Appeals agreed that the video was part of the record in these proceedings, Defendants did not seek review before this Court of the finding that it was part of the court record or of the order that the video be preserved. The finding that the video was part of the record in these proceedings is final and is no longer disputable. Hough, 1993 OK 112, ¶ 1, 867 P.2d at 440. Also, Defendants have admitted that at least one of them has retained a copy of the video and provided a copy at the hearing. Defendants have not asserted before this Court that the video is unavailable because it is in a litigation file.
¶13 One of a district court clerk's primary duties is to take custody of and preserve all materials that are part of a court's proceedings. See 12 O.S.2011, §§ 22, 29, 33; 12 O.S.2011, ch. 15, app. 1, rr. 1.28 and 1.33. Attorneys are officers of the court. 5 O.S.2011, ch. 1, app., art.1, § 2. When Defendants failed to seek review of the district court's finding that the video was part of the record and order to be preserved, the issue became final compelling the attorneys in this proceeding to observe their duty and submit the video to the court clerk for preservation as part of the record in this proceeding. We would not be faced with this issue if the district court had followed the better practice of having the video marked as an exhibit before finding it to be a part of the court record and for the court to retain a copy of the video to place in the court clerk's custody.
¶14 We now turn to the issues preserved for our review. Section 24A.8(A)(2) requires (1) a law enforcement agency (2) to allow inspection of a record (3) that contains facts concerning an arrest or the cause of arrest. Defendants implicitly define themselves as law enforcement agencies, and Plaintiff does not contest that they are.[4] Defendants do not contest that the video falls within Section 24A.8's scope of being a record of facts.[5] We laid any question of a video being a record to rest in Fabian & Assocs. v. State ex rel. Dep't of Pub. Safety, 2004 OK 67, ¶ 10, 100 P.3d 703, 705, wherein we found that the Act's definition of a record was sufficiently broad to include "any method of memorializing information."
A. Arrest
¶15 The first issue presented for resolution here is the breadth of the term "arrest" as used in Section 24A.8(A)(2). This is an issue of statutory construction. In construing a statute, our goal is to determine the Oklahoma Legislature's intent. Heldermon v. Wright, 2006 OK 86, ¶ 12, 152 P.3d 855, 859. The Legislature's expressed policy for the Act is to vest the people of Oklahoma "with the inherent right to know and be fully informed about their government." 51 O.S.2011, § 24A.2. The Legislature's emphatic message to government agencies is, unless otherwise specifically excluded, the public must have prompt and reasonable access to records. See Fabian, 2004 OK 67, ¶¶ 11-12; 100 P.3d at 705; City of Lawton v. Moore, 1993 OK 168, ¶¶ 5-6 , 868 P.2d 690, 704-05. Because of the strong public policy allowing public access to governmental records, we must construe the Act's provisions to allow access unless an exception clearly applies, and the burden is on the public agency seeking to deny access to show a record should not be made available. Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 65, ¶ 12, 73 P.3d 871, 875. We are mindful of the Act's policy, the Legislature's intent, and the burden of proof in our determination of the breadth of the term "arrest" as used in the Act.
¶16 In ascertaining the Legislature's intent, a court looks "to each part of an act, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural and absurd consequences of any particular interpretation." Blevins v. W.A. Graham Co., 1919 OK 147, ¶ 8, 182 P. 247, 248. Words will be given their common meaning unless a contrary legislative intent plainly appears. 25 O.S.2011, § 1; Welch v. Crow, 2009 OK 20, ¶ 10, 206 P.3d 599, 603.
¶17 In Title 22, Section 186 of the Oklahoma Statutes, the Legislature defined "arrest" as taking a person into custody, "that he may be held to answer for a public offense." And in Section 190, the Legislature determined that an "arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer." In so defining arrest, the Legislature adopted the common meaning of the term. See Arrest, Black's Law Dictionary 100 (5th ed. 1979) ("To deprive a person of his liberty by legal authority"); Arrest, American Heritage Dictionary 129 (2nd coll. ed. 1982) ("To seize and hold under authority of the law"). Custody, or restriction of liberty, is the linchpin in determining whether an arrest occurred. United States v. Leal-Felix, 665 F.3d 1037, 1043 (9th Cir. 2011) (citing Berkemer v. McCarty, 468 U.S. 420 (1984)).
¶18 When Mixon appeared at the arraignment, the district court ordered that he remain in the custody of his attorney and ordered him to appear at the Cleveland County Sheriff's Department and remain in its custody until he posted bail. Mixon was not free to do as he pleased or to ignore the court's order. He was in custody so that he could be held to answer for the misdemeanor crime of Acts Resulting in Gross Injury, 21 O.S.2011, § 22. Mixon was unquestionably in custody, and thus arrested for purposes of the Act, when the district court restricted his freedom.
¶19 Defendants argue (1) that an arrest must be without consent and against the will of the defendant, citing Castellano v. State, 1978 OK CR 107, ¶ 6, 585 P.2d 361, 364; and (2) that, pursuant to Title 22, Section 187, the arrest must be made by a police officer. Defendants conclude that if either of these two elements are absent, there is no arrest. We reject Defendants' arguments.
¶20 In Fabian, 2004 OK 67, 100 P.3d 703, this Court addressed the issue of whether audio tape recordings of driver's license revocation hearings were facts concerning an arrest or the cause of an arrest. The plaintiff represented defendants in both the revocation hearing and the associated criminal proceeding. Id. ¶ 3, 100 P.3d at 704. The plaintiff sought the recordings so that he could use them in the criminal proceedings. Id. This Court agreed that the recordings of the revocation hearing were "tapes contain[ing] facts concerning the arrest" and must be open to the public. Id. ¶ 14, 100 P.3d at 706. This Court made no distinction between arrests of those criminal defendants coercively taken into custody by an officer and those who voluntarily appeared before the court.
¶21 Even if we determined that an arrest must be made by a police officer, and Mixon was not arrested when placed in custody by the court, Defendants' argument would nonetheless fail. When Mixon appeared at the Cleveland County Sheriff's Department and had to remain there until he posted bail, he submitted to the custody of an officer, which Title 22, Section 190 specifically allows.
¶22 Just as criminal statutes are generally construed liberally in favor of a defendant, Graham v. Miracle, 1976 OK 162, ¶ 6, 556 P.2d 605, 606, we must construe the term "arrest," as used in the Act, liberally in favor of access to public records to effectuate the Legislature's intent. Heldermon, 2006 OK 86, ¶ 12, 152 P.3d at 859. Adding additional elements to the definition of arrest and its common meaning would thwart the Act's underlying legislative policy. It would allow law enforcement agencies to give preferential treatment to select defendants by allowing them to submit to a court rather than forcibly restraining them, and thus, suppressing videos depicting those defendants' violent and unbecoming behavior, while exposing the same or similar violent and unbecoming behavior of another, equally or even less culpable, defendant. If a law enforcement agency could notify a defendant of a pending arrest and allow that defendant to appear in court rather than have an officer execute a warrant, the agency could avoid the mandates of the Act. We will not attribute the Legislature with such a discriminatory intent. See Powers v. Dist. Ct. of Tulsa Cty., 2009 OK 91, ¶ 28, 227 P.3d 1060, 1078.
¶23 The Act requires the release of records unless an exception exists. Here, Mixon was arrested, and the video is a record of the facts leading up to the arrest. Section 24A.8(A) of the Act requires the video be made available to the public, including Association, and Defendants have failed to show an exception which would allow them to deny access.
B. Copying of the Record
¶24 When a statute is unambiguous, its language will be applied without further inquiry as to its meaning. Ball v. Multiple Injury Tr. Fund, 2015 OK 64, ¶ 6, 360 P.3d 499, 502. But if a literal construction leads to a conflict with other provisions within an act, this Court will reconcile the statutes using rules of statutory construction. Id. This Court will consider the context of ambiguous language and will not limit its consideration to one word or phrase. Id. An inept word choice will not be construed in a manner to defeat the obvious purpose of a legislative enactment. Zaloudek Grain Co. v. Compsource Okla., 2012 OK 75, ¶ 7, 298 P.3d 520, 523 (quoting TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15, 20).
¶25 The 2011 version of Section 24A.8(A) requires law enforcement agencies make enumerated records available for "inspection." Defendants urge that, because this provision does not include copying, they are only required to allow Association to inspect the video, which they have yet to do. Were we to consider Section 24A.8(A) out of context, we might agree with Defendants. But we must consider other provisions of the Act as well as the Legislature's intent.
¶26 Sections 24A.5 and 24A.6 of the Act provide that public bodies make their records available for "inspection, copying, or mechanical reproduction" unless specific exemptions apply. These provisions require public bodies, including Defendants, see 51 O.S.2011, § 24A.3(2), to provide times for the public, not only to inspect its records but, to copy the records. Id. §§ 24A.5, 24A.6. These provisions requiring public bodies to allow copying, as well as inspection, of their records are in direct conflict with Section 24A.8(A) under Defendants' theory that Section 24A.8(A) requires them to allow only inspection.
¶27 Conflicts between statutory provisions will be resolved in favor of a construction which promotes, rather than limits, the Legislature's intent and an act's purpose. See Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 33, 341 P.3d 56, 64; Zaloudek Grain Co., 2012 OK 75, ¶ 7, 298 P.3d at 523. Here as we previously noted, the Act's purpose is to allow the public access to public records. This purpose is furthered, not by restricting access by allowing public bodies to deny copies to the people of Oklahoma, but by requiring public bodies to allow copying. There are times when close inspection cannot be made by being allowed to view a video one time, but requires a copy which can be repeatedly viewed and subjected to scrutiny for a detailed analysis of an incident or to determine things such as a video's authenticity. To reconcile Section 24A.8(A) with Sections 24A.5 and 24A.6, we are compelled to define the public's right to inspect a record as used in Section 24A.8(A) as including their right to obtain a copy of the record.
¶28 The Legislature recognized this ambiguity between Section 24A.8(A) and Sections 24A.5 and 24A.6 when it amended Section 24A.8(A) to specifically include copying. 2014 Okla. Sess. Laws 896-97. This was not the first time the Legislature amended the Act's language to make it conform more closely with its purpose. In Oklahoma City News Broadcaster Association, Inc. v. Nigh, 1984 OK 31, ¶¶ 8, 14, 683 P.2d 72, 74, 76, this Court held that the records of the Governor's Mansion Account were not open to the public because they were not required by law to be kept. The Legislature promptly amended the Act during its next legislative session to allow inspection and copying of all records of public bodies whether or not required by law to be kept. 1985 Okla. Sess. Laws 1643-44.
¶29 Defendants urge that Section 24A.8(A) creates an exemption for law enforcement agencies from Sections 24A.5 and 24A.6. We cannot agree. Section 24A.5, not only requires public bodies to allow copying but, allows a public body to recover the costs of copying a record. If Section 24A.5 does not apply to law enforcement agencies, as Defendants advocate, they would be unable to recover costs pursuant to the Act after the 2014 amendment to Section 24A.8(A) requiring them to allow or provide copies of their records, including videos, since the amendment does not make provisions for law enforcement agencies to recover costs.
¶30 Resolving the ambiguity in favor of the Act's purpose and the Legislature's intent, we find that Title 51, Section 24A.8(A) of the 2011 Oklahoma Statutes must be read to allow copying as well as inspection of records of an arrest, including facts concerning an arrest. To do otherwise would ignore Sections 24A.5 and 24A.6 of the Act. Defendants have not provided how they would be prejudiced by allowing Association a copy of the surveillance video. Further, if this Court were to construe Section 24A.8(A) to disallow Association a copy of the video, Association could merely file another request since the amended version is now effective and clearly requires Defendants to allow Association copies. See 2015 Okla. Sess. Laws 1407-11.
V. CONCLUSION
¶31 The undisputed facts show that Association is entitled to judgment as a matter of law and entitled to a writ of mandamus. Chandler (U.S.A.), Inc. v. Tyree, 2004 OK 16, ¶ 24, 87 P.3d 598, 604-605. Mixon was arrested and the surveillance video contains facts concerning the arrest. The video was ordered to be a part of the court record and preserved by the attorneys. The Defendants must allow Association a copy of the surveillance video. This Court need not address Defendants' other arguments as they are not properly before this Court.
¶31 The Court of Civil Appeals' opinion is vacated in part and remains controlling to the issues not presented in the petition for certiorari and addressed by this Court. The district court's judgment is reversed. On remand, the district court is ordered to enter judgment for Association consistent with this opinion and without delay.
COURT OF CIVIL APPEALS' VACATED IN PART; JUDGMENT REVERSED; CAUSE REMANDED WITH INSTRUCTIONS.

CONCUR: Combs, C.J., Gurich, V.C.J., and Watt, Winchester, Edmondson (by separate writing), Taylor, and Reif, JJ.
CONCUR IN RESULT: Kauger, J.
DISSENT: Colbert, J.

FOOTNOTES

[1] See North Carolina v. Alford, 400 U.S. 25, 37 (1970). An Alford plea is one wherein a defendant accepts a criminal penalty without admitting guilt. Id.

[2] District Attorney's Office included in his response to the petition a motion to dismiss based on its allegation that it no longer had a copy of the video, that the suit is moot since Department allowed viewing earlier, that Association had failed to name an indispensable party, and that the District Attorney's Office was an improper party. District Attorney's Office "specifically denie[d] that [the] charges 'were the result of the incident shown and recorded in the video.'" None of these issues are properly before this Court. Hough v. Leonard, 1993 OK 112, ¶ 1, 867 P.2d 438, 440 (Issues not raised for appellate review are not a proper basis for reversing the judgment.).

[3] Association moved to redact or seal the extraneous attachments claiming they "are covered by either the Attorney Client Privilege or are Attorney Work Product materials" unrelated to this case. The motion is denied.

[4] City would have the district court and this Court assume that it is a law enforcement agency for purposes of the Act. Title 51, Section 24A.3(5) defines a law enforcement agency as "any public body charged with enforcing state or local criminal laws and initiating criminal prosecutions, including, but not limited to, police departments, county sheriffs, the Department of Public Safety, the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, the Alcoholic Beverage Laws Enforcement Commission, and the Oklahoma State Bureau of Investigation." Because defining the City otherwise does not alter the outcome of our decision here, for purposes of this opinion only and without reaching a decision on the issue, this Court will assume that all Defendants are law enforcement agencies.

[5] Title 51, Section 24A.3(1) defines "record" to mean
all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property. . . .
(Emphasis added.)
 


 


EDMONDSON, J., with whom GURICH, V.C.J., KAUGER, and WATT, JJ., join, concur by separate opinion. 
¶1 I concur in the Court's opinion and write to note the constitutionally flawed procedure used by the District Court and to provide a suggested procedure for similar cases. I also must also note for future similar cases the responsibility of the District Court in providing access of a video to the media on appellate remand when an appellate court has adjudicated the media is entitled to a copy pursuant to the Open Records Act.
¶2 The District Court of Cleveland County had a case on its criminal docket. This criminal case was a result of a dispute between two people that was also recorded on a surveillance video. A police officer for the City of Norman viewed and obtained the surveillance video. A police officer's affidavit of probable cause for issuance of an arrest warrant refers to the video.
¶3 The Oklahoma Association of Broadcasters (OAB) filed a civil case on the docket of the District Court and sought a copy of the surveillance video. The District Attorney responded and denied that the defendant's criminal charges were the result of the incident shown and recorded in the surveillance video.
¶4 A court hearing was held in the civil case on the City of Norman's motion to dismiss. The District Attorney's Office stated it no longer had the video and it had been returned to a third party. The Norman Police Department stated it had a copy of the video in its "litigation file" and such was not subject to an open records request.[1] During the hearing on the City's motion the trial judge and the attorneys viewed the video. The trial court concluded the OAB was not entitled to a copy of the video and "upon the request of Plaintiff and agreement of Defendants, that the subject surveillance video, which is now part of the Court record, be preserved pending any further action by the Plaintiff."
¶5 Regardless of the request by the Plaintiff or the agreement of the Defendants, the trial court's use of the video in the hearing had the legal effect of requiring the video to be placed in the custody of the court clerk or court reporter at the conclusion of the hearing, the clerk was subsequently required to preserve the video as a court exhibit introduced in evidence for the purpose of an appellate record, and this requirement is compelled by the Due Process provision of the Oklahoma Constitution.
¶6 The parties do not discuss whether the videotape was offered by a party or admitted in evidence in this civil proceeding. However, the judgment of the trial court and the parties' arguments conclusively show that the trial court directed the video be shown in court, viewed the video, and adjudicated a legal cause of action based upon the content of the video. The trial court's order specifically refers to what the video did and did not show. The trial court's use of the video was an admission of the video in evidence.
¶7 A court may use extra-record facts in a proper circumstance, but only when such facts are made a part of the trial court record.[2] The Due Process provision of the Oklahoma Constitution[3] prohibits a court from adjudicating a legal cause of action based upon evidence which is excluded from the court's evidentiary record.[4] A trial court's record "constitutes the only means for communication of its proceedings to an appellate court,"[5] that record must be in the custody of the district court clerk for certification to this Court,[6] and the District Court was thus required by the Due Process provision of the Oklahoma Constitution to preserve the video in the custody of the clerk for the District Court.
¶8 We recently noted a "video presentation of evidence is a convenient and cost-effective trial tool."[7] Videotapes "are admissible in the discretion of the trial court and under the same conditions as still photographs, namely, that they must accurately represent the events and persons portrayed."[8] The OAB's legal argument on appeal and the District Court's reasons stated in its order were based upon whether certain facts were revealed or shown by the video. A distinction often made is whether an assignment of error made a party in an appeal is based upon "what is shown" by the video opposed to "what is said" in a video. In the latter instance a transcript of the video suffices for appellate review, but in the former the video is necessary to support an assignment of error.[9]
¶9 Our review of a decision adjudicating a fact ordinarily requires the evidentiary material used by the trial court to be a part of the appellate record before us. In the case before us this would include an appellate examination to review "what is shown" by the video.[10] Forty years ago we explained a trial court procedure when an adjudication necessarily included an incorporated exhibit, and we noted that counsel should tender the exhibit to the trial court by application to supplement the record on appeal and to secure, upon notice to the opposite party and hearing, an order allowing leave to add the incorporated material to the appellate record.[11] In this case the exhibit is admitted in evidence, as a matter of law, and should be in the custody of the clerk for inclusion in the record on appeal without making such an application in the trial court. However, the trial court procedure used forty years ago is similar to this Court's rules for including a three dimensional exhibit in an appellate record. In 1996 this Court made substantial changes to its rules and determined that an appellate record should include only two dimensional exhibits, except upon an order from this Court allowing otherwise.[12] Provision is still made for seeking an order from this Court granting permission to include a three dimensional exhibit when necessary to adjudicate an appeal.[13] In the intervening twenty years since adoption of these rules, the use of electronic media in the courts has increased and this Court has noted a "video presentation of evidence is a convenient and cost-effective trial tool." I am confident the Court will amend its rules and provide for an electronic copy of admitted evidence, such as an admitted video exhibit, to be part of an appellate record without counsel seeking permission from the Court in each case. Until that time, appellants' counsel should seek such permission in individual cases to include such videos when necessary to show assigned error, or run the risk that admissions in briefs will not suffice. If a record deficiency occurs due to the absence of a video in the appellate record and insufficient admissions, then a potential result is a dismissed appeal on an insufficient record.[14] The uncontroverted facts in the parties' briefs provide a sufficient record in this particular case to show reversible error by the District Court,[15] but such will not always occur when assigned error on appeal is based upon "what is shown" in a video.
¶10 Although a District Court's reliance upon an exhibit, such as a videotape, may not necessarily convert a motion to dismiss to a motion for summary judgment,[16] I have concluded that the trial court's review of the video did not rely upon the mere allegations of OAB's petition but included facts "dehors the pleadings"[17] or "evidence outside the pleadings" to adjudicate a legal cause of action on the merits, e.g., summary judgment.[18] The appellate procedure for review of a summary judgment is well known and provided by this Court's Rule 1.36. This rule states that in an appeal from a summary judgment the appellate record may contain "(4) any other item on file which, according to some recitation in the trial court's journal entry or in some other order, was considered in the decisional process...." Okla.Sup.Ct.R. 1.36(c)(A)(4).[19] The video's use for adjudication appears on the face of the trial court's journal entry of judgment, and the video could have been filed with the District Court clerk as an exhibit and included with a transcript for the appellate record. This Court's Rule 1.33(c) requires a party to obtain permission from this Court to include a three dimensional exhibit in the appellate record. A party's timely Rule 1.33(c) motion filed in this Court should be sufficient to obtain an order authorizing a video to be part of an appellate record when the motion is based upon statements on the face of the summary judgment journal entry showing reliance on that video. Rule 1.36(c)(A)(4).[20]
¶11 Once the decision of the trial court had the legal effect of admitting the exhibit, then custody of the exhibit would ordinarily be with a court reporter and eventually with the court clerk for inclusion of the exhibit in a record certified for appellate review. A trial court should not restrict the video from the control and custody of either its court reporter or court clerk, but issue an order and provide for custody and maintaining the status quo of access to the video during any appeal which is brought for the purpose to determine the public or private nature of the video.
¶12 In Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission,[21] we quoted language from the United States Supreme Court on the importance of issuing a stay to maintain the status quo during an appeal.


No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that, as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.
Southwestern Bell Telephone Co., 897 P.2d at 1120, quoting Scripps-Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 9-10, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) (footnote omitted).
¶13 An adjudication of the duties of public officials such as a District Attorney and the Norman Police Department is ordinarily a matter in which the status quo is maintained during an appeal of that adjudication. While private rights and obligations may be waived, law concerning the structure and function of government, including public duties of public officials, are not usually subject to alteration by waiver of the public official,[22] or subject to modification for the mere reason that a private party has sought to legally challenge the official's actions.[23] While this Court has determined the OAB possessed a statutory right to copy the videotape, § 24A.8, the public officials had the right to question the interpretation of that right in a legal action that eventually determined the scope of their duties. On an appeal from a trial court's order adjudicating their public obligations the public officials possess an interest in maintaining the status quo until this Court has adjudicated the nature of their public obligation.[24]
¶14 A trial court document is "filed" when placed in an official's custody and deposited by that official in the place where the official records and papers are usually kept.[25] Exhibits are typically in temporary custody of a court reporter and filed with the court clerk for the purpose of an appeal, and the offering party has the obligation of taking possession of the exhibits upon the conclusion of the case after any appeals.[26] It is not necessary to list all of the local court rules involving custody of exhibits by court clerks and court reporters. This appeal is a continuation of the trial court proceeding,[27] and a trial court has jurisdiction to preserve its records pending an appeal, to issue a stay during an appeal,[28] and to exercise judicial discretion and maintain the status quo upon adjudication of a petition for a declaratory judgment.[29]
¶15 In the present case, Defendants argue that the videotape is a law enforcement "record" subject to examination but not copying, and the videotape was returned to a third party. The provision relied on by Defendants does not require confidentiality: "...law enforcement authorities may deny access...."[30] When confidentiality is not specifically required by law a District Court may nevertheless withhold material from a public record and a procedure is provided by the Open Records Act, § 24A.29,[31] which may be utilized during an appeal provided a party's due process right to an appellate record is protected. This procedure states documents produced or testimony given under a protective order may be retained in the office of counsel "until required by the court to be filed in the case."[32] Once the videotape was admitted in evidence the videotape was subsequently required to be filed with the court clerk for the purpose of the OAB's appeal. The procedure in § 24A.29 allows keeping a record off the public record although filed with the clerk.[33] Although the video is filed with the court clerk for the purpose of an appellate record, that filing does not make the video an "open court record" and subject to unrestricted copying as a court record.
¶16 The video is an "open record" and subject to copying for the OAB as a police record, but not as a court record. An exhibit, such as a videotape, admitted in evidence during a trial tribunal's proceedings is a part of the trial court's record,[34] but it is not an "open record" for the purpose of the Open Records Act. A "public body" for the purpose of the Open Records Act includes a court, and a videotape filed in a court has the potential to be a record[35] in the custody of court officials and potentially subject to copying,[36] and the clerk charging therefor,[37] unless the particular videotape is excluded from the category of "record" by the Open Records Act. While the Open Records Act places videos within the class of public records in a general sense, the Act also contains a specific provision concerning court records, 51 O.S. § 24A.30,[38] and defines a record subject to the Open Records Act with reference to "records" as defined by 12 O.S.2011 § 32.1. Section 32.1 specifically excludes "evidence" from the definition of a "record."[39] The video is an admitted exhibit and part of the evidentiary court record, but not part of the judgment roll.[40] The video's status as an admitted exhibit and part of evidence makes the video not subject to the Open Records Act as a court record,[41] although the video is subject to copying as a police record as explained by the Court's opinion.
¶17 The video of a physical altercation between two people was viewed by members of the press and its content made the subject of news reports. A lack of copying did not prevent public exposure of the events. Of course, the public must have access to government files in order to verify accountability and to monitor the manner in which public officers discharge their public duties.[42] The OAB's "open records request" for a copy of the surveillance video was made "immediately after" the entry of the defendant's Alford Plea.[43] Our Court of Criminal Appeals has noted that an Alford Plea "provides for the entry of a plea of guilty while maintaining innocence."[44] The OAB's articulated interest involves obtaining a record for copying because that record "concerned the facts of the arrest" and "including the cause of the arrest." While I agree with the Court's opinion and the OAB was entitled to make a copy of the videotape, maintaining the status quo during an appeal outweighs[45] an interest in copying the videotape while the civil appeal is pending when the original open records request was made after the court had accepted a guilty or Alford plea involving a private individual and actions taken by that individual in a private capacity.[46]
¶18 The actions of the parties, counsel, and District Court concerning custody of the video requires a few closing comments concerning this Court's mandate. Representations by counsel are that the City of Norman Police no longer possess the video, and that possession is maintained by the City's counsel. This representation raises the issue whether the duty of the police department to provide a public record on remand has become moot, as well as raising the issue if the City's duty is to be fulfilled by its attorney on remand. An appeal will be dismissed if it is moot.[47] There is no suggestion that the OAB sought equitable relief from the trial court to require the City of Norman Police Department to maintain a copy of the video in its records pending the litigation concerning the video's public status or that a denial of such request has been the subject of a timely appeal.[48] I need not address any potential or hypothetical theories concerning post-remand relief against the City of Norman or the City's duty in advance of their actual adjudication.[49]
¶19 The trial court must spread the mandate of record [50] performing that which is required by the Court's opinion,[51] and also decide any matter before that court which is left open by our opinion.[52] Our opinion requires the OAB to have access to the video as a public record for the OAB to obtain a copy. Our opinion does not expressly state how that access will occur. Two methods may be considered without addressing the City's potential or hypothetical post-remand duties.
¶20 A party usually has access to a record, transcript, and exhibits which are in the custody of the clerk upon an appellate remand when the mandate is spread of record. Records of a court are in that court's custody and control.[53] This video is an exhibit which has been admitted by virtue of the trial court's use of the video and is presently in the custody and control of the District Court, although actual possession is with a member of the Bar and an officer of the court.
¶21 The video was in the possession of the City's attorney, used in support of the City's motion, and the City may be considered as the offering party who has an obligation to take possession of a court exhibit, the video, upon conclusion of appeals.[54] However, this matter has been the subject of protracted litigation, and the conclusion of this individual appeal should not be a signal to the City to use 20 O.S.2011 § 1011(B) to once again assert exclusive control over the video, especially because of the inevitable post-mandate District Court application(s) to enforce the mandate and provide access for copying.
¶22 A trial judge possesses authority to require counsel for the City to provide the video, as admitted evidence, in a media format the District Court may use to both view the video and be in a convenient form for the clerk and court reporter. A post-remand requirement for filing the video with the court clerk would have the same result if the video had been part of the certified record on appeal and that record been returned to the court clerk upon issuance of mandate. The District Court may control its records and on remand order counsel to file the video in the proper format with the clerk to be used for purpose of copying for the parties as specified by the court.
¶23 The second method relies upon a District Court's authority to compel counsel to provide copies of trial exhibits to opposing counsel in a format convenient for the court. The video is an admitted exhibit. I construe the statements by the parties and the language of the journal entry herein as indicating the actual video presented at the hearing is also the video in the custody of the City's attorney. A trial judge possesses authority to require counsel for the City to provide copies of the video, as a trial exhibit and now adjudicated to be an open police record, to all opposing counsel.[55] The District Court may control its records and on remand simply order counsel to provide copies to opposing counsel.
¶24 In summary, I concur in the opinion of the Court, and suggest that in all District Court litigation adjudicating the public or private nature of a record the trial court should file the record at issue with the clerk of the court when necessary for an appellate record, and when appropriate maintain the public or private status quo of the record pending an aggrieved party's opportunity for appellate review. The District Court must enforce this Court's mandate by either providing the OAB a copy by access to the video in the custody of the clerk or by requiring counsel to provide all opposing counsel copies of the video.

FOOTNOTES

[1] Access to a public record otherwise available "for public inspection and copying" may not be denied because a public official has taken possession of the record for investigation or litigation purposes. 51 O.S.2011 § 24A.20. In the present matter, the City argues the record was available for inspection but not copying.

[2] C.F. Braun & Co. v. Corporation Commission, 1980 OK 42, 609 P.2d 1268, 1272-1273 (1980) discussing (1) judicial notice in Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) (Due Process is violated when in the exercise of quasi-judicial power judicial notice of extra-record facts is used without opportunity for rebuttal, and Court noted "The fundamentals of a trial were denied . . . upon the strength of evidential facts not spread upon the record . . . This is not the fair hearing essential to due process."), and (2) Oklahoma Natural Gas v. Corporation Commission, 1923 OK 400, 216 P. 917 (explaining that the Commission was required to "base its findings upon evidence before it.").

[3] Okla. Const. Art. 2 § 7: "No person shall be deprived of life, liberty, or property, without due process of law."

[4] La Bellman v. Gleason & Sanders, Inc., 1966 OK 183, 418 P.2d 949, 953 ("The jurisdiction of the trial court is limited to the particular subject matter presented by the pleadings, and any judgment which is beyond the issues framed by the pleadings and proof is in excess of the court's jurisdiction and is void.") (emphasis added). See also Oklahoma City v. Robinson, 1937 OK 16, 65 P.2d 531, quoting Gille v. Emmons, 58 Kan. 118, 48 P. 569, 570 (1897) in turn quoting Munday v. Vail, 34 N.J.L. 418, 422 (1871) (A judgment upon a matter outside of the issues pled and tried of record must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard.).

[5] Cumbey v. State, 1985 OK 36, 699 P.2d 1094, 1099 ("A trial court's record constitutes the only means for communication of its proceedings to an appellate court.").

[6] Chamberlin v. Chamberlin, 1986 OK 30, 720 P.2d 721, 723-724 ("This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court, nor may a deficient record be supplemented by material physically attached to a party's appellate brief."); State v. Torres, 2004 OK 12, ¶ 8, 87 P.3d 572, 578-579 ("Our review must stand confined to that record which was made before the nisi prius court at the time of its decision now under scrutiny."). Cf. Torres v. Seaboard Foods, L.L.C., 2016 OK 20, nn. 100, 101, 373 P.3d 1057, 1081 (legal theory addressed by the Court must be supported by facts appearing on appellate record and factual component of a party's aggrieved status is a "record-driven necessity").

[7] B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 17, 114 P.3d 1082, 1086.

[8] 2 L. Whinery, Oklahoma Evidence, Commentary on the Law of Evidence, § 22.07, 505 (2d ed. 2000).

[9] Compare B-Star, Inc. v. Polyone Corp., 2005 OK 8, ¶ 17, 114 P.3d 1082, 1086, citing 12 O.S. 2001 § 3232 ("To be considered on appeal, the transcript of the video deposition must be made a part of the record in the trial court and on appeal."), and U.S. v. Price, 54 F.3d 342 (7th Cir. 1995) (The court noted evidence necessary for resolving the appeal came from a video and court discussed what the video showed in addition to the statements in the recorded dialogue).
Using a surveillance video as evidence depicting an event is not novel. Pham v. State, 1988 OK CR 63, 752 P.2d 830, 832 (videotape of the crime was properly admitted, "[a]lthough the record reflects that the audio portion was less than clear, the jury was able to clearly see the actual incident as it occurred."); Lee v. State, 1985 OK CR 62, 700 P.2d 1017, 1019-1020 (no fundamental error occurred where surveillance video was admitted upon authentication by owner of the bar who viewed the video and removed it from the camera); Broadus v. State, 1976 OK CR 184, 553 P.2d 515, 519-520 (videotape with garbled sound was properly admitted upon a foundation "showing that it truly and correctly depicted the events and persons shown" [and] ...that the same was admissible for the purpose of corroborating the testimony of the prosecution's witnesses."). Cf. Kies v. City of Lima, 612 F.Supp.2d 888, 895 (N.D. Ohio 2009) (video recording of event, an arrest, was admissible "as a depiction of the scene it represents" pursuant to Fed. R. Evid. 901, although no sound was recorded); U. S. v. Stephens, 202 F.Supp.2d 1361, 1368 (N.D. Ga. 2002) ("recent federal decisions indicate that recordings made by surveillance equipment that operates automatically, such that no human being actually witnessed what the camera recorded while the camera was recording it, may satisfy the requirements of the Federal Rules of Evidence").

[10] Cumbey v. State, supra, Chamberlin v. Chamberlin, supra, State v. Torres, supra, Torres v. Seaboard Foods, supra.

[11] Eckel v. Adair, 1984 OK 86, n. 9, 698 P.2d 921, 924.

[12] 12 O.S.Supp.1997 Ch. 15, App. 1, Rule 1.33(c) (eff. Jan. 1, 1997).

[13] 12 O.S.Supp. 2015, Ch. 15, App. 1, Okla. Sup. Ct. R. 1.33 (c) ("The trial exhibits shall be indexed and incorporated into the transcript either by reference or physical attachment, as the court reporter may deem advisable. However, only two dimensional exhibits no larger than 8 1/2" x 14" may be transmitted to the Supreme Court with the record, except upon order of the Court.).

[14] Hamid v. Sew Original, 1982 OK 46, 645 P.2d 496, 497 (appeal dismissed because appellate record "presents nothing for our review."); Hughey v. Grand River Dam Authority, 1995 OK 56, 897 P.2d 1138, 1143 (In an appeal from summary judgment an appellate court's review is limited to the record before the trial court.).

[15] Booth v. McKnight, 2003 OK 49, 70 P.3d 855, (uncontroverted facts not appearing in the appellate record but in the parties' briefs may be considered to supplement an incomplete judgment roll); Board of Ed. of Ind. Sch. D. No. 48, Hughes Cty. v. Rives, 1974 OK 153, 531 P.2d 335, 336 (Court used in its opinion undisputed facts which were found in the appellate briefs).

[16] Some courts have held it is possible for a video exhibit to be incorporated by reference in a petition and a defendant's reliance upon statements or what is shown in that video will not necessarily convert the defendant's dismissal motion to one for summary judgment. First, a petition includes that which is incorporated by reference, and reliance upon incorporated material does not convert a motion to dismiss into a motion for summary judgment. Tucker v. Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, ¶ 30, n. 46, 341 P.3d 673, 684-685 relying upon the explanation of Federal Rule 10(c), and 12 O.S. § 2010 in Gaylord Entertainment Co. v. Thompson, 1998 OK 30, ¶ 4, n. 10, 958 P.2d 128, 136. Secondly, some courts have indicated that a federal complaint's reliance upon incorporated material may include statements in a video. Garcia v. Bloomberg, 865 F.Supp.2d 478, 483 n. 1, 492 (S.D.N.Y.2012) (statements in videos incorporated by reference into the federal complaint can be considered in deciding a motion to dismiss and crediting videos where "the videos themselves rebut plaintiffs' allegations"), reversed on other grounds, Garcia v. Does, 779 F.3d 84, n. 2, 87-88 (2d Cir. 2015) (noting party's concession that video was incorporated, but declining to decide whether Rule 10(c) incorporation extends to videos); Hershey v. Goldstein, 938 F.Supp.2d 491, n. 1, 498 (S.D.N.Y. 2013) (discussing incorporation by reference and relying in part on the District Court's decision in Garcia); Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690-691(7th Cir. 2012) (reserved the issue until a later date but noted incorporation of video by reference had been adopted by district courts, and "it makes eminently good sense to extend the doctrine to cover such works, especially in light of technological changes that have occasioned widespread production of audio-visual works.").

[17] Norman v. Trison Development Corp., 1992 OK 67, 832 P.2d 6, 8 ("... if a defendant asserts by motion that the petition fails to state a claim upon which relief may be granted and tenders for consideration materials dehors the pleadings, summary judgment procedure must be utilized.").

[18] An adjudication of a 12 O.S. § 2012(B)(6) motion to dismiss is converted to an adjudication on a motion for summary judgment when a non-jurisdictional ground is raised and the motion relies upon matters outside the pleadings. State ex rel. Bd. of Regents of University of Oklahoma v. Lucas, 2013 OK 14, nn. 9-10, 297 P.3d 378, 384 (explaining (1) that a motion to dismiss based solely upon a jurisdictional ground is not converted to one for summary judgment by reliance upon matters outside the pleadings, but a § 2012(B)(6) motion is so converted when reliance is made upon matters outside the pleadings, and (2) an adjudication in the form of summary judgment is on the merits of a controversy.).

[19] 12 O. S. Supp. 2016, Ch. 15, App. 1, Rule 1.36 (c)(A) provides: (c) Record on Appeal. The record on appeal will stand limited to: (A) In appeals from summary judgment: (1) the memorialized order by which summary judgment was entered; (2) pleadings proper as defined by 12 O.S. 2007(A), (petition, answer, etc.); (3) applicable instruments on file, including the motion and response with supporting briefs and attached materials filed by the parties as required by District Court Rules 13(a) and 13(b); (4) any other item on file which, according to some recitation in the trial court's journal entry or in some other order, was considered in the decisional process;(5) any other order dismissing some but not all parties or claims; (6) any transcripts of proceedings on the motion(s); (7) any motions, along with supporting and responsive briefs, for new trial (re-examination) of the summary judgment process; (8) the appearance docket; and (9) a cover page and Index of the record prepared by the party.

[20] In addition to the absence of the video from the appellate record, I must also note documents or public records concerning an arrest, such as a record of the sheriff's service fee, are apparently not available for review due to the District Court's action in removing them from public examination and their absence from the record on appeal. 28 O.S.2011 § 153.2: "In any criminal case in which a defendant is arrested for a violation of state law, Five Dollars ($5.00) of the costs charged in said case as provided for in Section 153 of Title 28 of the Oklahoma Statutes shall be paid to the Sheriff's Service Fee Account of the sheriff of the county in which the arrest was made. This fee shall be in addition to the fee authorized by Section 153 of Title 28 of the Oklahoma Statutes and shall be used to defer the costs associated with arrest."

[21] 1994 OK 142, 897 P.2d 1116.

[22] State ex rel. Ins. Fund v. JOA, Inc., 2003 OK 82, ¶ 7, 78 P.3d 534, 536-537.

[23] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 18, 326 P.3d 496, 504 (A court generally presumes a public official acts in good faith.); Copeland v. Lodge Enterprises, Inc., 2000 OK 36, ¶ 9, 4 P.3d 695 (When the day of trial arrives a party must have more than mere allegations, the party must possess "some proof to support his allegations.").

[24] Southwestern Bell Telephone Co. v. Oklahoma Corporation Commission, supra. See also the discussion in notes 45 and 46 infra.

[25] Aaron v. Farrow, 1925 OK 357, 238 P. 202, 203-204.

[26] 20 O.S.2011 § 1011(B) states: "It shall be mandatory that the offering party in any case shall take possession of all exhibits offered in a case at the conclusion of an appeal, or after the appeal time has elapsed if no appeal is taken, except in capital murder and workers' compensation cases."

[27] Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, n. 28, 270 P.3d 113, 122.

[28] Okla. Sup. Ct. R. 1.37:
(a) Trial Court Jurisdiction. After a petition-in-error has been filed, the trial court retains jurisdiction in the case for the following purposes:
(1) To facilitate the completion of the record and allocate the costs of its preparation . . . .
(4) To decide motions in regard to staying the enforcement of judgments, decrees or final orders or of interlocutory orders appealable by right, whether subject to stay of enforcement as a matter of statutory right, or subject to a discretionary stay order.

[29] A declaratory judgment has the force and effect of a final judgment and is reviewable in the same manner as other judgments. 12 O.S.2011 § 1654. In this proceeding, the District Court may stay the enforcement of its declaratory judgment pending an appeal with continuing jurisdiction to modify the order, including jurisdiction to maintain the status quo. 12 O.S.2011 § 990.4(D) ("In any action not provided for in subsection A, B or C of this section, the court may stay the enforcement of any judgment, decree or final order during the pendency of the appeal....") & § 990.4(E) ("The trial court shall have continuing jurisdiction during the pendency of any posttrial motion and appeal to modify any order it has entered regarding security or other conditions in connection with a stay."). The District Court's statutory requirement to maintain the status quo in some circumstances pursuant to 12 O.S.2011 § 990.5 is cited in note 46 infra.

[30] 51 O.S.2011 § 24A.8(B): Except for the records listed in subsection A of this section and those made open by other state or local laws, law enforcement agencies may deny access to law enforcement records except where a court finds that the public interest or the interest of an individual outweighs the reason for denial.

[31] 51 O.S.2011 § 24A.29. 51 O.S.Supp.2016 § 24A.29 currently provides in part:.
A. Unless confidentiality is specifically required by law, any order directing the withholding or removal of pleadings or other material from a public record shall contain:
1. A statement that the court has determined it is necessary in the interests of justice to remove the material from the public record and in those instances where such withholding is required by law, the order shall so indicate;
2. Specific identification of the material which is to be withheld, removed or withdrawn from the public record, or which is to be filed but not placed in the public record; and
3. A requirement that any party seeking to file protected materials place such materials in a sealed manila envelope clearly marked with the caption and case number, the word "CONFIDENTIAL", and stating the date the order was entered and the name of the judge entering the order. This requirement may also be satisfied by requiring the party to file the documents pursuant to the procedure for electronically filing sealed or confidential documents approved for electronic filing in the courts of this state.

[32] 51 O.S.Supp.2016 § 24A.29(D): "All documents produced or testimony given under a protective order shall be retained in the office of counsel until required by the court to be filed in the case."

[33] 51 O.S.Supp.2016 § 24A.29 (A)(2) requires the court's order to provide a "[s]pecific identification of the material which is to be . . . withdrawn from the public record, or which is to be filed but not placed in the public record...."

[34] Dixon Property v. Shaw, 1999 OK 96, ¶¶ 7-11, 2 P.3d 330, 332-333 (court record includes videotape admitted in Workers' Compensation Court proceeding).
In one sense, an exhibit's status as part of a trial court record is not the same as whether that exhibit is part of the evidence in a case. See, e.g., In re Estate of Whitlock, 1988 OK 10, 754 P.2d 862 (deposition testimony on file in the office of the trial court's clerk may or may not be part of the evidence in a case based upon whether it was admitted or properly excluded).

[35] 51 O.S.2011§ 24A.3(1)(2) states in part: "'Record' means . . . video record or other material regardless of physical form or characteristic... 2. 'Public body' shall include...court...."

[36] Records of a public body are open for copying. 51 O.S.2011 § 24A.5, which states in part: "All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours; provided: 1. The Oklahoma Open Records Act, Sections 24A.1 through 24A.30 of this title, does not apply to records specifically required by law to be kept confidential including:...."

[37] The clerk of the District Court may charge representatives of the media "the direct cost of making the copy" of any electronic media. 51 O.S.Supp.2016 § 24A.5(4) states in part: "Any request for a record which contains individual records of persons, and the cost of copying, reproducing or certifying each individual record is otherwise prescribed by state law, the cost may be assessed for each individual record, or portion thereof requested as prescribed by state law . . . however, publication in a newspaper or broadcast by news media for news purposes shall not constitute a resale or use of a record for trade or commercial purpose and charges for providing copies of electronic data to the news media for a news purpose shall not exceed the direct cost of making the copy."

[38] 51 O.S.Supp.2016 § 24A.30, states in part: "All court records, as defined by Section 32.1 of Title 12 of the Oklahoma Statutes, shall be considered public records and shall be subject to the provisions of the Oklahoma Open Records Act, unless otherwise identified by statute to be confidential." (Emphasis added).

[39] 12 O.S.2011 § 32.1: "The record shall be made up from the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court; but if the items of an account, or the copies of papers attached to the pleadings, be voluminous, the court may order the record to be made by abbreviating the same, or inserting a pertinent description thereof, or by omitting them entirely. Evidence must not be recorded."

[40] An admitted exhibit is "evidence" for the purpose of an evidentiary record but is not part of the judgment roll. Fent v. Oklahoma Natural Gas Co., a Div. of Oneok Inc., 1994 OK 108, 898 P.2d 126, 131-132 ("Evidence lies outside the judgment roll of an action.").

[41] I must also note no legal claim for either a vested property right in the content or legal right of confidentiality in the content has been alleged or adjudicated, but such issue would potentially arise if a court allowed unrestricted copying of exhibits in the custody of a court reporter or court clerk. For example, an exhibit that is copyrighted material such as documents, songs, and videos, does not lose copyright status when filed as an exhibit in a legal proceeding. See, e.g., David H. Isaacs, The Highest Form of Flattery? Application of the Fair Use Defense Against Copyright Claims for Unauthorized Appropriation of Litigation Documents, 71 Mo. L. Rev. 391, 412, n. 78 (2006) ("Indisputably, when musicians have submitted copies of their songs to the court as exhibits in order to resolve a copyright dispute, those songs have not lost their copyrighted status.").
Copyright status, by itself, will not prevent a party from using copyrighted material as an exhibit. See, e.g., John Tehranian, The New ©ensorship, 101 Iowa Law Rev. 245, n. 236, 290, (2015) citing Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992), quoting 3 Nimmer on Copyright § 13.05(d) (1991) ("works are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions ... and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence").

[42] Oklahoma Public Employees Ass'n v. State ex rel. Oklahoma Office of Personnel Management, 2011 OK 68, ¶ 36, 267 P.3d 838, 851.

[43] Appellant's Brief, No. 113,973, Oct. 14, 2016, at pg. 5.

[44] Gilson v. State, 2000 OK CR 14, n.2, ¶ 16, 8 P.3d 883, 898, citing North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). See also Davis v. State, 2011 OK CR 7, n. 1, 246 P.3d 1097, quoting Alford, 400 U.S. at 37: "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

[45] A Rule 1.15 stay involves several factors, a minimum of four, which are weighed or balanced by the Court. Okla. Sup. Ct. R. Rule 1.15: "No application for a stay, supersedeas, or suspension pending appeal will be considered unless the applicant addresses: (a) The likelihood of success on appeal; (b) The threat of irreparable harm to moving party if relief is not granted; (c) The potential harm to the opposing party; and (d) Any risk of harm to the public interest." The nature of weighing or balancing by the Court may be observed in opinions addressing similar factors used to show a need for a temporary injunction. Edwards v. Board of County Com'rs of Canadian County, 2015 OK 58, ¶ 12, 378 P.3d 54, 59 ("To obtain a temporary injunction, a plaintiff must show that four factors weigh in their favor: 1) the likelihood of success on the merits; 2) irreparable harm to the party seeking the relief if the injunction is denied; 3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and 4) the injunction is in the public interest.").

[46] The judgment was not "against" the City of Norman. Whether a District Court may order a public entity to provide public access to a record for copying during an appeal of the public/private nature of a record may involve application of 12 O.S.2011 § 990.5. That section states: "Notwithstanding any other provision of this title, the execution of a judgment or final order of any judicial tribunal against any county, municipality, or other political subdivision of this state is automatically stayed without the execution of supersedeas bond until any appeal of such judgment or final order has finally been determined."
I have not addressed whether circumstances may exist when a public interest requires public access to a record and copying during an appeal even though the issue presented on appeal is whether the record is a public record and subject to examination and copying pursuant to the Open Records Act.

[47] Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, ¶ 27, 270 P.3d 113, 127, citing Lawrence v. Cleveland County Home Loan Auth., 1981 OK 28, 626 P.2d 314, 315 (rule stated when relief sought is necessarily prevented on remand the appeal will be dismissed as moot, and example of the rule in Lawrence occurred when injunctive relief was sought to prevent the issuance of bonds but they were issued during the appeal, and the record did not reflect that any attempt had been made to obtain a judicially approved stay); Holland v. Agrawal, 2015 OK 68, 364 P.3d 626 (example of an appeal dismissed as moot).

[48] See, e.g., Lawrence v. Cleveland County Home Loan Auth., supra, at note 47; Edwards v. Board of County Com'rs of Canadian County, 2015 OK 58, ¶ 10, 378 P.3d 54 ("The purpose of a temporary injunction is to preserve the status quo and prevent the perpetuation of a wrong or the doing of an act whereby the rights of the moving party may be materially invaded, injured, or endangered...A temporary injunction protects a court's ability to render a meaningful decision on merits of the controversy.").

[49] Guardianship of Berry, 2014 OK 56, n. 43, 335 P.3d 779, 800 (the Court does not issue advisory opinions or answer hypothetical questions).

[50] C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Oklahoma, 2002 OK 99, ¶ 19, 72 P.3d 1, 5, quoting Pyle v. Pennington Grocery Co., 1940 OK 176, 101 P.2d 847, 848, (" Where a cause has been presented to the trial court and the issues therein determined, and an appeal has been prosecuted to the Supreme Court and the mandate issued determining the controversy, it is the duty of the trial court to spread the mandate of record.").

[51] Smedrsud v. Powell, 2002 OK 87, ¶ 16, 61 P.3d 891, 897 ("At the postremand stage, i.e., after this court's mandate has been transmitted and spread of record, the trial court is duty-bound to comply with its terms by a careful consideration of the opinion on which it is based.").

[52] State v. Huston, 1911 OK 221, 116 P. 161 (" It is well settled that the trial court may decide any matters left open, and its decision thereon is subject to be reviewed by a new proceeding in error.").

[53] In re Spilman, 2010 OK 70, ¶ 7, 240 P.3d 702, 708.

[54] 20 O.S.2011 § 1011(B), supra.

[55] See, e.g., 12 O.S.Supp. 2013 Ch. 2, App., Uniform Rules for District Courts, Rule 5, Pretrial Proceedings, ¶¶ (G)(3), (I) &(K) (exhibits should be exchanged with opposing counsel to obtain, when necessary, advance rulings from the trial court on the admissibility of evidence; all exhibits must be marked, listed and identified in the pretrial conference order with any objections to admissibility stated, and after pretrial if an additional exhibit is discovered it must be immediately marked for identification and a copy furnished to opposing counsel.).




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1988 OK CR 63, 752 P.2d 830, PHAM v. STATE
Discussed
 1978 OK CR 107, 585 P.2d 361, CASTELLANO v. STATE
Discussed
 2011 OK CR 7, 246 P.3d 1097, DAVIS v. STATE
Discussed
 1985 OK CR 62, 700 P.2d 1017, LEE v. STATE
Discussed
 2000 OK CR 14, 8 P.3d 883, 71 OBJ 2063, Gilson v. State
Discussed
 1976 OK CR 184, 553 P.2d 515, BROADUS v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 10, 754 P.2d 862, 59 OBJ 332, Estate of Whitlock, In re
Discussed
 1940 OK 176, 101 P.2d 847, 187 Okla. 133, PYLE v. GROC
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1992 OK 67, 832 P.2d 6, 63 OBJ 1444, Norman v. Trison Development Corp.
Discussed
 1993 OK 112, 867 P.2d 438, 64 OBJ 2836, Hough v. Leonard
Discussed at Length
 1993 OK 168, 868 P.2d 690, 65 OBJ 55, City of Lawton v. Moore
Discussed
 1937 OK 16, 65 P.2d 531, 179 Okla. 309, OKLAHOMA CITY v. ROBINSON
Discussed
 1994 OK 142, 897 P.2d 1116, 65 OBJ 4181, Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n
Discussed
 1994 OK 108, 898 P.2d 126, 65 OBJ 3215, Fent v. Oklahoma Natural Gas Co.
Discussed
 1919 OK 147, 182 P. 247, 72 Okla. 308, BLEVINS v. W. A. GRAHAM CO.
Discussed
 1966 OK 183, 418 P.2d 949, LA BELLMAN v. GLEASON & SANDERS, INC.
Discussed
 1923 OK 400, 216 P. 917, 90 Okla. 84, OKLAHOMA NATURAL GAS CO. v. CORPORATION COMM'N
Discussed
 1995 OK 56, 897 P.2d 1138, 66 OBJ 1844, Hughey v. Grand River Dam Authority
Discussed
 2002 OK 87, 61 P.3d 891, SMEDSRUD v. POWELL
Discussed
 2002 OK 99, 72 P.3d 1, C & L ENTERPRISES, INC., v. CITIZEN BAND POTAWATOMI TRIBE
Discussed
 2003 OK 49, 70 P.3d 855, BOOTH v. McKNIGHT
Discussed
 2003 OK 65, 73 P.3d 871, CITIZENS AGAINST TAXPAYER ABUSE, INC. v. CITY OF OKLAHOMA CITY
Discussed
 2003 OK 82, 78 P.3d 534, STATE ex rel. STATE INSURANCE FUND v. JOA, INC.
Discussed
 2004 OK 12, 87 P.3d 572, STATE v. TORRES
Discussed
 2004 OK 16, 87 P.3d 598, CHANDLER (U.S.A.), INC. v. TYREE
Discussed
 2004 OK 36, 92 P.3d 88, ESTATE OF HICKS v. URBAN EAST, INC.
Discussed
 2004 OK 67, 100 P.3d 703, FABIAN & ASSOCIATES, P.C. v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length
 2005 OK 8, 114 P.3d 1082, B-STAR, INC. v. POLYONE CORPORATION
Discussed at Length
 2006 OK 86, 152 P.3d 855, HELDERMON v. WRIGHT
Discussed at Length
 2009 OK 20, 206 P.3d 599, WELCH v. CROW
Discussed
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 70, 240 P.3d 702, IN THE MATTER OF THE APPLICATION OF SPILMAN
Discussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSA
Discussed at Length
 2011 OK 68, 267 P.3d 838, OKLA. PUBLIC EMPLOYEES ASSOC. v. STATE ex rel. OKLA. OFFICE OF PERSONNEL MANAGEMENT
Discussed
 2012 OK 75, 298 P.3d 520, ZALOUDEK GRAIN COMPANY v. COMPSOURCE OKLAHOMA
Discussed at Length
 1925 OK 357, 238 P. 202, 113 Okla. 27, AARON v. FARROW
Discussed
 1974 OK 153, 531 P.2d 335, BOARD OF ED. OF IND. SCH. D. NO. 48 v. RIVES
Discussed
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 1980 OK 42, 609 P.2d 1268, C. F. Braun & Co. v. Corporation Commission
Discussed
 1976 OK 162, 556 P.2d 605, GRAHAM v. MIRACLE
Discussed
 2014 OK 56, 335 P.3d 779, IN THE MATTER OF THE GUARDIANSHIP OF BERRY
Discussed
 2014 OK 95, 341 P.3d 56, AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.
Discussed
 2015 OK 58, 378 P.3d 54, EDWARDS v. BOARD OF COUNTY COMMISSIONERS
Discussed
 2015 OK 64, 360 P.3d 499, BALL v. MULTIPLE INJURY TRUST FUND
Discussed
 2015 OK 68, 364 P.3d 626, HOLLAND v. AGRAWAL
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed
 1999 OK 96, 2 P.3d 330, 70 OBJ 3635, Dixon Property Co. v. Shaw
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
 1981 OK 28, 626 P.2d 314, Lawrence v. Cleveland County Home Loan Authority
Discussed
 1997 OK 152, 951 P.2d 1079, 68 OBJ 4087, PICKENS v. TULSA METROPOLITAN MINISTRY
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
 1911 OK 221, 116 P. 161, 28 Okla. 718, STATE ex rel. GOLDSBOROUGH v. HUSTON
Discussed
 1984 OK 31, 683 P.2d 72, 55 OBJ 1128, Oklahoma City News Broadcasters Ass'n, Inc. v. Nigh
Discussed
 1984 OK 86, 698 P.2d 921, Eckel v. Adair
Discussed
 1985 OK 36, 699 P.2d 1094, Cumbey v. State
Discussed
 1986 OK 30, 720 P.2d 721, 57 OBJ 1415, Chamberlin v. Chamberlin
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 990.4, Stay of Enforcement of Judgment, Decree, or Final Order
Cited
 12 O.S. 22, District Court Clerk Shall Keep Certain Records
Cited
 12 O.S. 32.1, Contents of Record
Discussed
 12 O.S. 990.5, Automatic Stay
Discussed
 12 O.S. 1654, Determination to Have Effect of Final Judgment - Reviewable as Other Judgments
Cited
 12 O.S. 2010, Form of Pleadings
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed
 12 O.S. 3232, Use of Depositions in Court Proceedings
Cited
Title 20. Courts
 Cite
Name
Level

 20 O.S. 1011, Court Reporter - Removal of Materials
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 22, Acts Resulting in Gross Injury - Misdemeanor
Discussed
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 1, Meaning of Words
Cited
Title 28. Fees
 Cite
Name
Level

 28 O.S. 153.2, Fee Paid to Sheriff's Service Fee Account
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 24A.3, Definitions
Discussed
 51 O.S. 24A.29, Protected Materials - Protective Orders - Orders Directing Withholding, Removal of Pleadings or Other Material From Public Record
Discussed at Length
 51 O.S. 24A.30, Court Records - Authority of the Court to Seal a Record
Discussed
 51 O.S. 24A.1, Short Title
Cited
 51 O.S. 24A.2, Political Power - Public Policy and Purpose of Act
Cited
 51 O.S. 24A.5, Open and Confidential Records
Discussed
 51 O.S. 24A.8, Law Enforcement Agency Records Available for Public Inspection
Discussed at Length
 51 O.S. 24A.20, Access to Records in Possession of Public Body or Official for Investigatory Purposes
Cited